In the

# United States Court of Appeals
## For the Seventh Circuit

No. 10-1658

KARL SWANSON and KATHY WIETHARN,

*Plaintiffs-Appellants,*

*v.*

CITY OF CHETEK, a municipal corporation,
and JERRY WHITWORTH, in his individual
and official capacities,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 09-cv-0097-slc—**Stephen L. Crocker**, *Magistrate Judge.*

ARGUED SEPTEMBER 7, 2012—DECIDED JUNE 19, 2013

Before CUDAHY, ROVNER, and TINDER, *Circuit Judges.*

CUDAHY, *Circuit Judge.* This is a case about a class-of-one equal protection claim in which the plaintiff has demonstrated hostility, but may have failed to identify a similarly situated individual who received more favorable conduct. The magistrate judge granted summary judgment for defendants because, though there

was evidence of animus, there was no similarly situated individual. Because animus is the very basis of a class-of-one claim, we reverse.

Karl Swanson purchased a lakeside home in Chetek, Wisconsin. He and Kathy Wietharn live together, but Wietharn holds no ownership interest in the Chetek home. They moved in next door to Jerry Whitworth, the elected mayor of Chetek. Swanson decided to remodel the home. He obtained a building permit for "remodel—repair" and began work. Swanson also decided to put in a three-feet high fence between his property and Whitworth's and along the street. Whitworth did not like this situation and used his position to harass Swanson.

Whitworth's harassment of Swanson included: repeatedly telling building inspector Bill Koepp that he should not have issued the remodeling permit; repeatedly entering the Swanson home without permission; using his influence to cause building inspector Joe Atwood to block (or at least delay) the grant of a fence permit;[1] telling the fence building team that

---

[1] Swanson was given contradictory information regarding where the fence could be placed, and whether it could be built without a permit. Wietharn's first meeting with Atwood was interrupted when Whitworth entered the room and began shouting that no permit would be issued. At that meeting, Atwood refused to provide Wietharn a fence permit application. In a later meeting, Atwood informed Wietharn that the fence was a "structure" and thus had to be set back more than 20 feet. Wietharn believed this informa-

(continued...)

Swanson and Wietharn were drug dealers and unlikely to pay for the work provided; and causing the City's prosecution of Swanson in municipal court for the construction of the fence in violation of a five-foot setback requirement.

This case against Swanson was without legal basis. The ordinance at issue applied only to fences four feet or higher. Further, the judge determined that Swanson's fence work did not require a separate permit and the repair permit validly authorized such work. The City did not appeal the decision.

During this period of harassment, Michele Eberle, a neighbor of Swanson, erected a fence that straddled part of Swanson's property. This fence was constructed without a permit and allowed to be closer to the property line than Swanson's litigated fence. Building inspector Atwood confirmed that the fence encroached on Swanson's property. After the completion of the fence, Atwood filled out a building permit application form for Eberle and later issued the permit authorizing the movement of the fence to "the property line." This occurred during the same period that the City cited Swanson for placement of a boundary fence within several feet of Whitworth's property line.

Swanson and Wietharn filed a class-of-one equal protection suit, as well as defamation and slander claims

(...continued)

tion was incorrect and so did not fill out a structure permit application.

under Wisconsin law. The magistrate judge granted summary judgment for Whitworth as to the Fourteenth Amendment claim, finding that though "[t]he facts found for the purpose of deciding summary judgment suggest that the Mayor of Chetek employed his city's bureaucracy to wage a personal vendetta against [Swanson and Wietharn]" the equal protection claim must fail because Swanson and Wietharn did not show a similarly situated individual who received more favorable treatment. The magistrate judge felt that Eberle's situation was not very similar to Swanson's for two main reasons: first, Swanson did not provide enough information regarding the height and character of Eberle's fence; and second, Eberle's fence was only a boundary fence while Swanson's fencing involved a front fence and a boundary fence. The magistrate judge declined to exercise supplemental jurisdiction over Swanson's and Wietharn's state law claims and they were dismissed without prejudice.

Swanson and Wietharn appeal. This court has jurisdiction under 28 U.S.C. § 1291. This court reviews a motion for summary judgment *de novo*, drawing all inferences in the non-moving party's favor. *See Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996); *Wolf v. Buss Am. Inc.*, 77 F.3d 914, 918 (7th Cir. 1996). We begin our analysis by noting that Wietharn lacks standing to bring an equal protection claim arising from the mistreatment of Swanson and the abuse of permits regarding Swanson's home. However, we feel that a clear showing of animus, absent a robust comparison to

a similarly situated individual, may sustain a class-of-one equal protection claim and so we reverse.

I.

The doctrine of standing instructs the court to determine if a litigant is entitled to a federal resolution of his grievance. To satisfy standing, (1) a plaintiff must have suffered an "injury in fact:" an invasion of a legally protected interest which is concrete and particularized, and actual and imminent; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "A party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

In the case before us, although Whitworth may have defamed Wietharn or otherwise behaved in a boorish manner, Wietharn has not sustained an invasion of a legally protected interest in connection with the unequal treatment of Swanson's fence work. First, the property in Chetek is owned solely by Swanson. Wietharn's status as a person who lives with Swanson is not enough to provide her with a constitutional cause of action under the Equal Protection Clause. Second, the City cited and sued Swanson for the violation of ordinances. Even though Wietharn was acting as an agent

for Swanson when dealing with Atwood, and it seems clear that she may have felt frustrated by the bureaucratic run-around she encountered, the legally protected interests at issue belonged to Swanson. "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be [her]self among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972). Because Wietharn was not the subject of any municipal citation, and was not the object of any government action, Wietharn has not suffered an "injury in fact," and has not satisfied the first element of standing. Wietharn is therefore not a proper plaintiff to the class-of-one equal protection claim.

Of course, this does not mean that Wietharn has no legal recourse for the possible torts committed against her. Swanson and Wietharn asserted state common law claims for defamation and slander against Whitworth, for telling the fence building team that they were drug dealers who were unlikely to pay for the work provided. However, the magistrate judge dismissed Swanson's and Wietharn's class-of-one claims, and consequently, declined to exercise supplemental jurisdiction over their state law claims. Wietharn's state law claims may allow her possible redress for injuries to her reputation.

## II.

The Equal Protection Clause of the Fourteenth Amendment protects individuals from governmental discrimination. The typical equal protection case involves dis-

crimination by race, national origin or sex. However, the Clause also prohibits the singling out of a person for different treatment for no rational reason. To state a class-of-one equal protection claim, an individual must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The classic class-of-one claim is illustrated when a public official, "with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen." *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005). This improper motive is usually covert, so courts first look to eliminate all proper motives. If there was no rational basis for the treatment of the plaintiff, then the motives must be irrational and improper. *See Vill. of Willowbrook*, 528 U.S. at 564-65. To achieve clarity, courts look to the treatment of similarly situated individuals: if all principal characteristics of the two individuals are the same, and one received more favorable treatment, this may show there was no proper motivation for the disparate treatment. *See Geinosky v. City of Chicago*, 675 F.3d 743, 748 (7th Cir. 2012) ("When the parties raise a serious question whether differences in treatment stem from a discriminatory purpose or from a relevant factual difference, the key evidence is often what was done in the investigation or prosecution of others in similar circumstances."). It is this difficulty in showing animus that has motivated a large number of splits, including a tied en banc in this court in *Del Marcelle v.*

*Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc), over whether animus must be alleged or whether a showing of different treatment with no rational basis is enough.[2]

Thankfully, for the present issue we need not wade into the question of what to do in the absence of alleged animus. In most class-of-one cases, the comparison of similarly situated individuals will be used to infer animus. However, this case presents the opposite circumstance: animus is easily demonstrated but similarly situated individuals are difficult to find. Below, the magistrate judge found animus due to the overt actions of Whitworth: Whitworth bore Swanson ill will, caused an investigation against him, interrupted meetings of the plaintiffs and building inspectors and angrily informed building inspectors that no permit should be granted. The magistrate judge concluded at the summary judgment stage that the facts supported the notion that Whitworth abused his powers as mayor in order to pursue his vendetta against plaintiffs. However, the magistrate judge held that because the proffered similarly situated individual, Eberle, was sufficiently

---

[2] The Seventh Circuit's case law on this subject is contradictory. *See Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 683-84 (7th Cir. 2005) (discussing two, and possibly three, lines of cases). However, this case does not present the court with a "merely unexplained difference in . . . treatment," which was contemplated in *Hilton v. City of Wheeling,* 209 F.3d 1005, 1008 (7th Cir. 2000), but instead concerns overt hostility.

different from plaintiffs, their claim must fail. The magistrate judge erred in this conclusion of law.

If animus is readily obvious, it seems redundant to require that the plaintiff show disparate treatment in a near exact, one-to-one comparison to another individual. *See Fenje v. Feldt*, 398 F.3d 620, 628 (7th Cir. 2005) ("[A]n 'orchestrated campaign of official harassment directed against [the plaintiff] out of sheer malice,' 'vindictiveness,' or 'malignant animosity' would state a claim for relief under the Equal Protection Clause." (quoting *Esmail v. Macrane*, 53 F.3d 176, 178-79 (7th Cir. 1995)); *see also Nevel v. Vill. of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000) (so-called "vindictive action" equal protection cases require proof of "a totally illegitimate animus toward the plaintiff by the defendant").

This case is similar to *Geinosky v. City of Chicago*, in which Geinosky received twenty-four bogus parking tickets within a year, all written by officers of Unit 253 of the Chicago Police Department. 675 F.3d 743, 745 (7th Cir. 2012). Geinosky brought a class-of-one discrimination claim. However, because Geinosky failed to identify a similarly situated individual, the district court granted judgment for the City. *Id*. at 749. We reversed, explaining that

> requiring Geinosky to name a similarly situated person who did not receive twenty-four bogus parking tickets in 2007 and 2008 would not help distinguish between ordinary wrongful acts and deliberately discriminatory denials of equal protec-

tion. . . . On these unusual facts—many baseless tickets that were highly unlikely to have been a product of random mistakes—Geinosky's general assertion that other persons were not similarly abused does not require names or descriptions in support.

*Id*. at 748-49.

If anything, Swanson presents a stronger argument for animus than in *Geinosky*. In *Geinosky*, there was no apparent motive for the ticketing officers and animus could be inferred from the sheer absurdity of the number of illegitimate tickets. Swanson, on the other hand, has identified his specific harasser, provided a plausible motive and detailed a series of alleged actions by Whitworth that appear illegitimate on their face. Taken together, Whitworth's alleged statements and behaviors demonstrate overt hostility. It would be oddly formalistic to then demand a near identical, one-to-one comparison to prove the readily-apparent hostility.

In the present case, where the direct showing of animus was very strong, Swanson's pointing to Michele Eberle as a similarly situated individual was helpful in indicating the norm governing the regulation of fences in Chetek. Whitworth's actions against Swanson resulted in a drastic deviation from that norm, and Whitworth's previous statements made clear that his personal hatred caused this unwarranted difference in treatment. Hypothetically, if the direct evidence of animus were less strong but still significant, Eberle's circumstance could be invoked as additional support for a direct showing of animus. Here, however, all

Swanson needs to show is that harassment, yelling, arbitrary denials and frivolous litigation do not normally follow requests for fence permits.

AFFIRMED in part, REVERSED in part, and REMANDED.