OPINION *
SHWARTZ, Circuit Judge.
Deborah and Alfred Patterson allege that their neighbor, Councilman Joseph Strippoli, used his position to cause the selective enforcement of Lindenwold, New Jersey ordinances against them, in violation of the Equal Protection Clause. The District Court granted Strippoli’s motion for summary judgment. For the reasons set forth herein, we will affirm in part and reverse in part.
I
The Pattersons, an interracial married couple, have resided at 412 East Elm Avenue in Lindenwold since March 2003.[1] Since June 2006, they have owned and operated a recycling business through which they provide trash disposal and site clean-up, including the removal-, of scrap metal and glass, from residences and businesses. The Pattersons assert that they do not operate the business from their home, but concede that Alfred Patterson often returned to the property with materials, he planned to take to the landfill or that he intended to refurbish and sell. Alfred Patterson also testified that he sometimes “sort[s] through” items in his backyard, and that on one occasion, he cut metal beams on the property. R. 646.
Strippoli has resided at 401 East Linden Avenue since 1985. The corner of his backyard abuts the Pattersons’. He served as the mayor of Lindenwold from 1988 through 1991 and has been a Councilman since 1999; Strippoli lodged complaints about the Pattersons with the police and code enforcement department many times. Strippoli also admits taking pictures of the Pattersons’ yard to document ordinance violations; helping to initiate a petition among local residents to “shut down the Junk Yard Business at 412 E. Elm Avenue,” R. 1378; authoring a proposed amendment to the property maintenance code to “make it more clear” that junkyards are prohibited in residential areas, R. 123; and frequently complaining about the Pattersons’ yard to the mayor and other Council members, including Councilman Justin Jackson, the Council’s liaison to the borough’s code enforcement department.
Between July 2004 and April 2012, Lin-denwold police and code enforcement officers visited the Pattersons’ property more than two dozen times to investigate alleged ordinance violations, including the accumulation of junk and rubbish in the Patter-sons’ yard and excessive noise. The Pat-tersons were cited for such conduct on multiple occasions, and admitted to more than twenty violations. The Pattersons were also twice cited, on December 2, 2011, and April 9, 2012, for having a portable basketball hoop on their front curb, in violation of a sports equipment ordinance prohibiting such placement.[2] Five of the *140 Pattersons’ neighbors, none of whom were interracial couples, but who also had basketball hoops on the curb, were not cited before the Pattersons filed this lawsuit.[3]
The Pattersons assert that Strippoli fixated on their property for discriminatory reasons, citing several racially offensive comments he allegedly made. Another Councilman, Kenneth Balmer, testified that he once heard Strippoli say, with reference to Deborah Patterson, that he did not understand “why she married a black guy like that.”[4] R. 145. Former Linden-wold Mayor Frank DeLucca testified that Strippoli asked him more than once “how would you like that black SOB living next door to you.” R. 231-32. Deborah Patterson herself testified that when she confronted Strippoli taking pictures of the yard in 2008, and asked him what his problem was, he responded “well, what are you doing married to a black man like that.” R. 388-89.
On July 26, 2012, the Pattersons filed a complaint pursuant to 42 U.S.C. § 1983 alleging that Strippoli used his position as a Councilman to cause the selective enforcement of the borough’s ordinances against them “based on their status as an interracial couple” (“Count I”), and without any “rational basis” (“Count II”), in violation of. the Equal Protection Clause of the Fourteenth Amendment.[5] R. 1447-48. Finding that the Pattersons failed to adduce sufficient evidence showing that they were treated differently from similarly situated Lindenwold property owners, the District Court granted. Strippoli’s motion for summary judgment on both claims. The Pattersons appeal.
II[6]
A
The Pattersons claim that Strippoli has violated their equal protection rights since 2004 by causing police and code enforcement officers to visit their home and issue citations. The first issue we must address is whether they may seek relief for conduct that occurred up to eight years before they filed their complaint. The statute of limitations for § 1983 claims in New Jersey is two years. O’Connor v. City of Newark, 440 F.3d 125, 126-27 (3d *141 Cir.2006). The Pattersons attempt to avoid this two-year limitation period by relying on the continuing violations doctrine. Under this doctrine, “when a defendant’s conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.”[7] Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir.2001) (internal quotation marks and citation omitted). This doctrine operates as a type of tolling and is often applied to address injuries that are the “collective result of many non-actionable” slights. Major Tours, Inc. v. Colored 799 F.Supp.2d 376, 387 n. 3 (D.N.J.2011); see also O’Connor, 440 F.3d at 128 (stating that the doctrine is designed to address situations in which the plaintiffs claim is “based on the cumulative effect of a thousand cuts”). “[Ijndivid-ually actionable allegations,” even if relatively minor, however, “must be raised within the applicable limitations period.” O’Connor, 440 F.3d at 127. Because a' selective prosecution claim under the Equal Protection Clause may be established by “a single discriminatory act,” Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1186-87 (7th Cir.1986), 'the claim based on it accrues at the time of the discriminatory or irrational enforcement action. See O’Connor, 440 F.3d at 127; Major Tours, 799 F.Supp.2d at 389 (holding that discrete acts of racial profiling in violation of plaintiffs’ equal protection rights cannot be aggregated under the continuing violations doctrine because every time such an act occurs, “a cause of action arises,” and that to hold otherwise “would undermine the grave import of such racial discrimination”). Thus, enforcement actions that pre-date July 26, 2010 are time-barred and we will affirm the District Court’s statute of limitations ruling.[8]
B
We now turn to the merits of the Patter-sons’ § 1983 claims. To establish liability under § 1983, a plaintiff must show that the defendant, acting under color of law, violated the plaintiffs federal constitutional or statutory rights and caused injury. Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir.2005). The parties do not dispute that Strippoli was acting at all relevant times as a Councilman, and thus he was acting under color of law.[9]
The Pattersons allege that Strippoli violated their federal constitutional equal protection rights by causing the selective en *142 forcement of the borough’s ordinances. A plaintiff may pursue an equal protection selective enforcement claim under a traditional theory, which protects a plaintiff from discriminatory treatment based on. membership in a protected class. See D’Altilio v. Dover Twp., Civ. No. 1:06-CV-1931, 2007 WL 2845073, at *8 (M.D.Pa. Sept. 26, 2007). In contrast, a plaintiff may pursue an equal protection claim under a “class of one” theory by showing that a state actor treated him differently from similarly situated individuals without a rational basis for the different treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); PG Publ’g Co. v. Aichele, 705 F.3d 91, 114 (3d Cir.2013). Such a plaintiff need not show he was a member of a protected class or that he was treated differently for an impermissible reason, such as race. See D'Altilio, 2007 WL 2845073 at *10.
The Pattersons advance both theories. In Count I, they argue that Strippoli discriminated against them based on race. In Count II, they lodge a class of one claim, asserting that Strippoli caused the selective enforcement of borough ordinances against them with “no rational basis.” R. 1448.
Both theories require a showing that similarly situated people were treated differently. The Pattersons urge us to conclude that the “similarly situated” persons here are “all Lindenwold property owners.” Appellant Br. 39-40. We decline to adopt this view. “Persons are similarly situated under the Equal Protection Clause when they are alike ‘in all relevant aspects.’ ” Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir.2008) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992)). While the Pattersons and all other Linden-wold property owners are similar insofar as they are property owners in the same borough, such a broad interpretation of the “similarly situated” requirement ignores relevant distinctions between the Patter-sons and property owners' who did not violate borough ordinances. We therefore agree with the District Court that the “similarly situated” persons here are other Lindenwold property owners deserving of “the attention of the police and/or code enforcement officers for the condition of their properties.” App. 21.
We must next determine whether there is a genuine issue of material fact that the Pattersons were treated differently from other similarly situated Linden-wold property owners. The Pattersons assert that they were treated differently because they were subject to the enforcement of borough ordinances related to the accumulation of debris on their property, excessive noise, and the presence of a basketball hoop on the curb when others were not. With respect to the first two categories, we conclude that the Pattersons failed to present sufficient evidence that they were treated differently from similarly situated persons.. Notably, the Patter-sons do not identify any other Lindenwold homeowners who violated the debris or noise ordinances but were not visited or cited by the police or code enforcement officers. Cf. Olech, 528 U.S. at 565, 120 S.Ct. 1073 (concluding that plaintiff had established different treatment because she showed that defendant “demanded a 33-foot easement as a condition of connecting her property to the municipal water supply” but “required only a 15-foot easement from other similarly situated property owners”). Indeed, the record shows that code enforcement officers conducted “hundreds” of property inspections for alleged violations of borough ordinances during the relevant time period, the “overwhelming majority” of which re- *143 suited in citations, including citations for the same or similar debris and noise conduct for which the Pattersons were cited. R. 1268. For this reason, summary judgment on both Counts I and II, to the extent those counts are based on selective enforcement of the debris or noise ordinances, is appropriate.[10]
The Pattersons have, however, produced evidence from which a jury could find that they were treated differently with respect to the sports equipment ordinance. Five households in the Pattersons’ neighborhood, in the vicinity of Strippoli’s home, also maintained basketball hoops on, the curb and were not cited for a violation before the Pattersons filed this lawsuit, while the Pattersons were cited twice. R. 1443-44.[11] Although the five households were cited for sports equipment violations after the Pattersons filed this lawsuit, such subsequent citations are not probative of whether the Pattersons were treated differently before the suit was filed. Cf. Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1129 (9th Cir. 2000); Lam v. Univ. of Hi., 40 F.3d 1551, 1561 n. 17 (9th Cir.1994); Rich v. Martin Marietta Corp., 522 F.2d 333, 346 (10th Cir.1975) (“If post filing conduct is to be taken into account at all, it might tend to show the existence of prior discrimination and an effort to repair the harm after discovery.”); see also Holcomb v. Iona College, 521 F.3d 130, 143 (2d Cir.2008) (a fact finder may view post-lawsuit hiring of a minority as a way of concealing prior discrimination); Gonzales v. Police Dep’t, City of San Jose, 901 F.2d 758, 761-62 (9th Cir.1990) (subsequent hiring actions not relevant to whether discrimination occurred before lawsuit was filed and noting decisions from the Courts of Appeal from the Fifth and Sixth Circuit concluding that post-law suit actions do not constitute a defense to or moot a discrimination claim). In sum, the fact that these five households were subsequently cited does not defeat the Pattersons’ equal protection claim.
We next consider whether there is sufficient evidence that any different treatment related to the enforcement of the sports equipment ordinance was based on race or lacked a rational basis. To succeed on their race-based selective enforcement equal protection claim set forth in Count I, the Pattersons must show that they are members of a protected class, that they were treated differently from members outside that class, and that the different treatment was motivated by race. See Bradley v. United States, 299 F.3d 197, 205-06 (3d Cir.2002). This requires proof that the defendant engaged in purposeful discrimination. Based on a review of the record, we conclude that there is sufficient evidence, if credited by a jury, to support such a claim. First, it is undisput *144 ed that the Pattersons are part of a protected class as an interracial couple, and that those who were not cited for a sports equipment violation, and reside in the general vicinity of Strippoli’s house, were not. Second, the Pattersons have adduced evidence from which a jury may conclude that Strippoli harbors racial animus. Councilman Balmer testified that Strippoli verbally questioned “why [Deborah Patterson] married a black guy like that,” R. 145, and former Mayor DeLucca testified that Strippoli asked him more than once “how would you like that black SOB living next door to you,” R. 231-32.[12] Deborah Patterson testified that when she confronted Strippoli attempting to photograph ordinance violations in her yard, and asked him what his problem was, he responded “well, what are you doing married to a black man like that.” R. 388-89. From these facts, a reasonable jury could conclude that Strippoli was motivated by a racially discriminatory purpose in lodging complaints with the police, code enforce-merit department, and other members of the Lindenwold Council about the Patter-sons’ property, and that he caused the Pattersons to be cited for violating the sports- equipment ordinance.[13] Accordingly; we-will reverse the grant of summary judgment on Count I, only insofar as it is based on the selective enforcement of Lin-denwold’s sports equipment ordinance against the Pattersons based on race.
We now turn to Count II, the Pat-tersons’ “class of one” claim. As indicated previously, plaintiffs “state[] a claim for violation of the Equal Protection [C]lause when [they] allege[] that [they] ha[ve] been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.” Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir.2006) (internal quotation marks and citation omitted). The rational basis standard for a “class of one” claim sets a high hurdle for plaintiffs, requiring a showing of different treatment *145 that is “irrational and wholly arbitrary.” Eichenlaub v. Twp. of Ind., 385 F.3d 274, 286 (3d Cir.2004) (quoting Olech, 528 U.S. at 565, 120 S.Ct. 1073).
As already discussed, the Pattersons were twice cited for violating the sports equipment ordinance and five of their neighbors who also placed basketball hoops at the curb were not until this lawsuit was filed. Even though the record shows twenty-eight similar citations in Lindenwold during the period before the Pattersons filed their complaint, the record is unclear as to why these five homes, which are within a few blocks of the Pat-tersons’ home, and hence in Strippóli’s general neighborhood, were not cited, but the Pattersons were. Because no explanation has been provided for this discrepancy, a reasonable jury could conclude that there was no rational basis for it. ' Thus, we will reverse the order granting summary judgment on the Pattersons’1 class of one claim only insofar as it asserts the discriminatory enforcement of the sports equipment ordinance.
Ill
For the foregoing reasons, we will affirm the District Court’s statute of limitations ruling, affirm in part and reverse in part the order granting Strippoli’s motion for summary judgment, and remand for proceedings consistent with this opinion.

 This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

. Deborah Patterson is Caucasian. Alfred Patterson is African-American.

. The ordinance specifically prohibits sports equipment "from being used in and on [a] public street,” including "basketball” and "[g]oals and other type[s][of] netting.” R. 1050. The purpose of the ordinance is to *140 prevent children from playing sports in the street, which can be dangerous and obstruct traffic. According to Al Hallworth, the Lin-denwold official in charge of code enforcement, the sports equipment ordinance was not normally enforced unless children were in the street and, under such circumstances, everyone on the block would receive a citation.

. Between August 3, 2011 and July 26, 2012, twenty-eight citations were issued to other property owners for violations of the sports equipment ordinance.

. Balmer also testified that on one occasion he heard Strippoli remark that a person who had arrived late to a borough meeting was on ''CPT,” or “colored people's time.” R. 145. Strippoli admitted using this phrase,

. The Pattersons also filed a due process claim against Strippoli and a Monell claim against the borough, but do not appeal the dismissal of these claims.

.The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of the District Court's grant of summary judgment and apply the same standard it applied, under which summary judgment is appropriate if "there is no genuine dispute as to any material fact and the mov-ant is entitled to judgment as a matter of law.” Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir.2014) (internal quotation marks and citation omitted). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof.” Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

. The continuing violations doctrine is most often applied to hostile work environment claims, where not every act or remark itself is actionable but the series of actions gives rise to a claim based on the aggregate wrongs. Major Tours, Inc. v. Colorel, 799 F.Supp.2d 376, 388 (D.N.J.2011).

. Although these earlier incidents do not provide a basis for relief, they may provide "background evidence in support of” the Pat-tersons’ timely filed claims if the District Court deems them admissible. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

.Prior to oral argument, Strippoli did not challenge the District Court’s finding that he was acting under color of law. While he describes himself in the summary of argument portion of his brief as a neighbor who did nothing in his official capacity to cause harm to the Pattersons, he does not assert anywhere in his brief that he was not a state actor or otherwise reference the District Court’s ruling to that effect. Rather, his arguments address whether he had the authority to cause the Pattersons to be cited and whether the independent actions of other Council members and code enforcement officers eliminate any liability he might have. Thus, the state actor ruling is not before us.

. Our colleague would let a jury consider the Pattersons’ claim that the debris and noise ordinances were unequally enforced against them based on Geinosky v. City of Chicago, 675 F.3d 743 (7th Cir.2012). Geinosky, however, is distinguishable. Whereas the plaintiff in that case received twenty-four "bogus” parking tickets, all of which were ultimately dismissed as illegitimate, id. at 745, the Pat-tersons admitted to more than twenty ordinance violations, including numerous violations related to debris and noise.

. Strippoli also disputes that these five households are his immediate neighbors, and points out that twenty-eight citations were issued in Lindenwold for violations of the sports equipment ordinance between August 3, 2011, a few months before the Pattersons' first sports equipment citation, and July 26, 2012, the date of the filing of their complaint, R. 1319-22. Whether this suggests that Strip-poli was unaware of the five households in the neighborhood who also violated the ordinance and/or that the Pattersons’ citations are not indicative of selective treatment is a jury question.

. Councilman Balmer testified, and Strippoli admitted, that Strippoli used the racially offensive term "CPT.” R. 124, 145.

. There is sufficient circumstantial evidence from which a jury could find Strippoli caused the Pattersons to be cited. Though both code enforcement officers who issued the basketball hoop citations testified that Councilman Justin Jackson informed them of the violations, Strippoli admitted to complaining about the Pattersons to Jackson "a half dozen times.” R. 107. In addition, Deborah Patterson testified that when Robert Fort, a newly-hired code enforcement officer, arrived at her home to issue the April 9, 2012 basketball hoop citation, he told her that Strippoli had called him.
Strippoli disputes this, arguing that the "independent” actions of the code enforcement officers broke the chain of causation between himself and the Pattersons’ alleged injuries and thus eliminate his liability. Appellee Br. 35. While Strippoli is correct that "an intervening act of a third party, which actively operates to produce harm after the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable,” Egervary v. Young, 366 F.3d 238, 246 (3d Cir.2004), the conduct of the third party "will only constitute an intervening cause if the [third party’s act] is genuinely free from deception or coercion,” id, at 247 (quoting Hector v. Watt, 235 F.3d 154, 164 (3d Cir.2000) (Nygaard, J., concurring)). Here, there is sufficient evidence from which a jury could find that the code enforcement officers’ sports ordinance citation decisions were not free from Strippoli’s coercion, and thus his causation argument fails. According to Fort, Strippoli asked him to investigate the Pattersons' property shortly after he assumed the job. Fort further testified that "[Strippoli] had me follow him over to [the Pattersons'] house and showed me the violations from his yard,” and told Fort that "if [he] didn’t take care of the violations on the Patterson property, [he] could end up like the other two previous code enforcement officers,” who no longer worked for the borough. R. 11.