In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2561

MARICA R. JOHNSON,

*Plaintiff-Appellant*,

*v.*

KOPPERS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:10-cv-03404 — **Joan Humphrey Lefkow**, *Judge.*

ARGUED FEBRUARY 13, 2013 — DECIDED AUGUST 8, 2013

Before BAUER, SYKES, and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.* Marica R. Johnson filed suit against her former employer, Koppers Inc., alleging race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 et seq., and 42 U.S.C. § 1981. Following discovery, the parties filed cross-motions for summary judgment. The district court granted Koppers'

motion for summary judgement and denied Johnson's. For the following reasons, we affirm.

## I.  BACKGROUND

Koppers is a chemical company that manufactures carbon compounds and commercial wood treatment products. Johnson is an African-American woman who was employed at Koppers' plant in Stickney, Illinois, from 1995 until her termination on May 12, 2008. At the time of her termination, Johnson was employed as a laboratory technician, a position she held since 2000.

Prior to the date of her dismissal, Johnson was disciplined five times. In July 1999, Johnson was suspended without pay for ten workdays after the plant manager found her asleep at her desk in the laboratory. In August 2000, Johnson received a written warning because she was observed smoking in the lunch room. In December 2005, Johnson received another written warning for not punching out on the time clock after her work was finished.

More seriously, Johnson was disciplined in November 2006 for fighting with a security guard. Johnson had gone to the guard shack to pick up food that she had ordered, but when the guard told Johnson that she could not take the food, she walked behind the guard's counter, without authorization, and grabbed it. The guard touched Johnson's arm, and she pushed him, telling him that he "better keep his hands off of her." Johnson also threatened the guard and said that she was going to "bust his head." Johnson testified that the guard subsequently picked up the telephone and said "[w]e're going to get to busting." Johnson then threw the stapler she was holding

down towards the floor. The entire incident was recorded on video.

The plant manager at the time investigated the incident and interviewed Johnson. She was ultimately suspended for ten days without pay and was warned that any future occurrences would result in the termination of her employment. Johnson admits that the discipline was justified.

More recently, in July 2007, Johnson was disciplined following an altercation with co-worker Michael O'Connell, a white male. This altercation took place while Johnson was working in the laboratory with her radio playing. O'Connell came into the lab, turned down the volume, and turned on the air conditioner. Johnson testified that she then asked O'Connell why he was "messing with her stuff when it wasn't even his shift yet." According to Johnson, there was no further interaction. O'Connell, however, later told the plant manager that Johnson had threatened him and called him a colorful array of racial and gender-based slurs.

Without interviewing Johnson, the plant manager determined that both O'Connell and Johnson were at fault and decided that Johnson should be punished more severely because of her prior disciplinary history and O'Connell's allegations of racial harassment. The plant manager issued a written letter to Johnson, which stated in part:

> In the past few weeks you have exhibited disruptive behavior that has caused other employees to feel uncomfortable and intimidated. Your actions concern Koppers management especially since you have exhibited a propensity towards physical

> violence … Plant management has been notified by
> union employees that you exhibited offensive and
> intimidating language and behavior on a number of
> recent occasions … This behavior will not be al-
> lowed in the future and will result in discharge from
> Koppers.

O'Connell received a less severe warning letter, which stated in part,

> Personality conflicts between lab techs has [sic]
> resulted in a non-productive atmosphere in the lab.
> Horse play, false accusation of others, verbal harass-
> ment, and any other type of disruptive behavior
> needs to stop immediately. This disruptive action
> between you and other employees needs to stop
> before it escalates into physical violence.

The United Steelworkers Union filed a grievance on Johnson's behalf because the plant manager did not interview her before he issued Johnson a warning letter. Pursuant to the agreement between the union and Koppers' management, Johnson's warning was reduced to a memo that summarized her work obligations and employment status.

The tension between Johnson and O'Connell came to a head on April 28, 2008. The exact details of the altercation are disputed by the parties. However, it is undisputed that Johnson and O'Connell got into another heated argument that morning. Later that afternoon, the shift supervisor called Johnson into his office. As Johnson was entering the supervisor's office, O'Connell was exiting. According to Johnson, their shoulders brushed, and O'Connell said excuse me. According

to O'Connell, who later filed a police report, Johnson pushed him into a wall outside of the supervisor's office.

The plant manager investigated O'Connell's allegations. He interviewed Johnson twice as well as O'Connell, the shift supervisor, a janitor, and several other co-workers. The only eye witness to the altercation was the janitor, who was employed by a third-party cleaning company. The janitor told the plant manager that he saw Johnson deliberately push O'Connell. The shift supervisor also stated that Johnson had been "totally insubordinate" and was "out of control" on April 28, and she should be terminated.

At the end of the investigation, the plant manager converted Johnson's suspension into a termination. He formally terminated Johnson's employment by letter on May 12, 2008. The letter states that Koppers' management spoke with Johnson, O'Connell, and several other individuals regarding the incident and that "[i]t appears to the Company, based on those discussions, that you were, in fact, behaving in an aggressive, hostile, and threatening manner on the afternoon of April 28 and you did push Mr. O'Connell into the wall of the tar foreman's office as alleged." The letter further states that Johnson was terminated because, "since November 2006, [she had] been trained, counseled, warned, and suspended as a result of violations of the standards of conduct that Koppers rightfully has of its employees."

Ultimately, Johnson filed suit against Koppers alleging discrimination on the basis of her race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 et seq., and 42 U.S.C. § 1981. The case proceeded through

discovery, when Johnson and Koppers filed cross-motions for summary judgment. Koppers argued that Johnson failed to show discrimination based on the direct and indirect methods of proof. Johnson argued she proved discrimination under the direct method, using the "cat's paw theory" of liability. On April 16, 2012, the district court granted Koppers' motion and denied Johnson's motion.

## II.  DISCUSSION

On appeal, Johnson argues that the district court erred in granting summary judgment in favor of Koppers because genuine issues of material fact remained as to whether Johnson suffered discrimination, under both the direct and indirect methods of proof. We review the district court's granting of summary judgement *de novo*, *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 653 (7th Cir. 2010), examining the record in the light most favorable to Johnson and resolving all evidentiary conflicts and reasonable inferences in her favor, *Coleman v. Donahoe*, 667 F.3d 835, 842 (7th Cir. 2012). We address each of Johnson's arguments in turn.

### A.  Direct Discrimination

An employee alleging discrimination under Title VII or § 1981 may proceed under the direct method of proof if the employee can demonstrate "either an acknowledgment of discriminatory intent or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Overly v. KeyBnak Nat. Ass'n*, 662 F.3d 856, 865 (7th Cir. 2011). Having no such evidence of bias by the plant manager who actually terminated Johnson's employment, Johnson asserts a cat's paw theory of liability. The cat's paw theory applies in the employ-

ment discrimination context when "a biased subordinate who lacks decision-making power uses the formal decision maker 'as a dupe in a deliberate scheme to trigger a discriminatory employment action.'" *Smith v. Bray*, 681 F.3d 888, 897 (7th Cir. 2012) (quoting *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484 (10th Cir. 2006)). Thus, the cat's paw theory requires both evidence that the biased subordinate actually harbored discriminatory animus against the victim of the subject employment action, and evidence that the biased subordinate's scheme was the proximate cause of the adverse employment action.

Johnson argues that her claim should succeed under the cat's paw theory because her co-worker, O'Connell, harbored discriminatory animus against her race and gender. As O'Connell had no power to terminate Johnson himself, Johnson argues that O'Connell falsely reported that she called *him* racial and gender-based slurs on one occasion and pushed him following a separate verbal altercation, in order to induce the plant manager to terminate Johnson's employment at Koppers.

On appeal, Johnson argues that the district court erred in granting summary judgment to Koppers under her cat's paw theory because an evidentiary conflict exists. Johnson points to the dispute regarding whether she actually called O'Connell the derogatory terms, or whether O'Connell completely made up the slurs when he reported the conduct to the plant manager as part of a plot to get Johnson fired. Johnson argues that this disputed fact is vital because if O'Connell falsely reported that Johnson called him racial and gender-based slurs, O'Connell's selection of these terms evidences the fact that

O'Connell himself actually harbored racial and gender-bias towards Johnson. In her brief, Johnson calls this a "classic case of projection" and deems it "sufficient evidence of discriminatory animus." We disagree.

Even assuming O'Connell's report was false, Johnson's theory of "projection" fails because it requires a speculative inference as to O'Connell's state of mind, which is unsupported by any other evidence pointing to the existence of discriminatory animus on O'Connell's part. A false report by O'Connell, standing alone, is insufficient to establish discriminatory animus. While it is clear from the record that O'Connell and Johnson did not like each other, Johnson has provided no evidence to indicate that O'Connell's animosity was motivated by discriminatory bias against her race or gender, and we are not required to draw inferences that, "are supported by only speculation and conjecture." *See Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013).

In order to succeed under the cat's paw theory, Johnson needs to show that O'Connell, motivated by discriminatory animus, concocted a false story about Johnson, and that O'Connell's story was  the proximate cause of Johnson's termination. *See Jajeh v. Cook County*, 678 F.3d 560, 572 (7th Cir. 2012). That simply is not the case here. The proximate cause of Johnson's termination was actually the April 2008 physical altercation between Johnson and O'Connell that was witnessed by an independent third party. During the plant manager's investigation, the third-party witness confirmed that Johnson shoved O'Connell, and Johnson was subsequently fired. Johnson has failed to put forth any evidence that O'Connell's

actions were the proximate cause of her termination; thus, her claim cannot succeed under the direct method.

### B. Indirect Method

Next, Johnson argues that the district court erroneously determined that Johnson failed to put forth evidence of discrimination under the indirect method. Under the indirect method, a plaintiff must establish a prima facie case of discrimination with evidence that (1) she is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; (4) similarly-situated employees outside of the protected class were treated more favorably. *Smiley v. Columbia College Chicago*, 714 F.3d 998, 1002 (7th Cir. 2013). If she satisfies a *prima facie* case, the burden shifts to her employer to identify a legitimate, non-discriminatory reason for the termination. *Id*. If the employer can make such a showing, the burden shifts back to the plaintiff to show that the reason offered was pretextual. *Id*.

Normally, we first determine whether a plaintiff has established a *prima facie* case before putting the employer through the burden of demonstrating a non-discriminatory reason for a termination and engaging in the pretext analysis. *Everroad v. Scott Trucks Sys. Inc.*, 604 F.3d 471, 478 (7th Cir. 2010). In some cases, though, the issue of satisfactory performance and the question of pretext overlap. When the employer asserts as the nondiscriminatory reason for termination that the employee was not meeting legitimate job expectations, the credibility of the employer's assertion is at issue for both the second element of the plaintiff's *prima facie* case and the pretext analysis. *Id*.

Here, neither side disputes that Johnson is a member of a protected class and that she suffered an adverse employment action. However, Johnson's claim fails because she cannot prove that she met Koppers' legitimate job expectations, or that Koppers' non-discriminatory reason for termination was pretextual. While Johnson correctly points out that there is no evidence to suggest that she had not been adequately performing her duties as a lab technician, her termination stemmed from a specific incident of insubordination, not a failure to perform her daily tasks. Johnson's insubordination—pushing a co-coworker—clearly does not meet Koppers' legitimate job expectations, even if she was an otherwise satisfactory lab technician.

Johnson's supervisor believed her behavior violated Koppers' written Code of Conduct and terminated Johnson on that basis. Johnson, however, claims that because she never admitted to shoving O'Connell during the April 2008 altercation that led to her termination, Koppers cannot use the disputed incident as proof that Johnson failed to meet its expectations. In support of this contention, she cites *Everroad v. Scott Trucks Sys. Inc.*, 604 F.3d 471, 478 (7th Cir. 2010), where we held that the plaintiff failed to meet her employer's legitimate expectations because she *admitted* that she was insubordinate. The relevant inquiry here, however, does not require an admission of insubordination. Rather, we look to whether Johnson's supervisor "genuinely believed" she was insubordinate. *Id*. If so, the reason for termination is not pretextual. *See id.* n.2. That a jury might disagree with the supervisor's decision or even find that he erred in his assessment does not render the termination decision discriminatory. *Id*.

In an effort to show that Koppers' non-discriminatory reason for terminating Johnson was pretextual, Johnson seems to argue that her termination was not based upon her insubordination but rather on a larger conspiracy within Koppers that stemmed from a discriminatory animus against her race and gender. In support of this theory, Johnson points out that although both she and O'Connell were involved in the prior July 2007 verbal altercation, O'Connell (a white male) was disciplined less severely than Johnson. She argues that discrimination can be inferred from Koppers' disparate treatment of these two similarly-situated employees. *See Coleman v. Donahoe*, 667 F.3d 835, 846–47 (7th. Cir. 2012). But O'Connell, unlike Johnson, had not previously violated Koppers' policy against threatening misconduct, so he is not an appropriate comparator. *See Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 860 (7th Cir. 2008) (employees were not similarly-situated because, unlike the plaintiff, they did not previously engage in misconduct).

Further, following the April 2008 incident, Johnson's manager conducted an investigation where he interviewed multiple employees, including Johnson's shift supervisor who characterized her behavior as "totally insubordinate" and "out of control." Johnson's termination letter noted that "this is not the first instance of threatening, intimidating, disruptive, or abusive behavior" during her employment at Koppers; and further pointed out that since 2006 Johnson had been "trained, counseled, warned, and suspended as a result of violations of the standards of conduct that Koppers rightfully has of its employees … and regrettably, those discussions and warnings have not resulted in the required change" in Johnson's behav-

ior, and accordingly terminated her employment. Because there is no support for Johnson's claim that her termination resulted from anything other than her own insubordination, we affirm summary judgment for Koppers under the indirect method as well.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM.