In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2575

STEPHANIE MILLER, et al.,

*Plaintiffs-Appellants*,

*v.*

CITY OF MONONA, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:10-cv-00221 — **William M. Conley**, *Chief Judge*.

ARGUED JANUARY 6, 2015 — DECIDED MAY 1, 2015

Before FLAUM, WILLIAMS, and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. This appeal requires us to again address the boundaries of the class-of-one doctrine under the Equal Protection Clause of the Fourteenth Amendment. Stephanie Miller and her husband James Stellhorn, along with their co-owned company, Harlan LLC, brought suit under 42 U.S.C. § 1983 against the City of Monona, Wisconsin, and various public officials involved in their protracted effort to gain approval to build a condominium project. Mil-

ler spearheaded this effort, so for the sake of simplicity, we will use her name as shorthand for the other appellants un-less necessary to do otherwise.[1] Miller raised claims of class-of-one and sex discrimination under the Fourteenth Amendment, and unreasonable search of the property under the Fourth Amendment. The district court dismissed the class-of-one claim early in the litigation, reasoning that Mil-ler had not pointed to any similarly situated development project that had been treated more favorably. Although Mil-ler proceeded, unsuccessfully, to summary judgment and trial on her other claims, in this appeal she challenges only the dismissal of the class-of-one claim. We affirm.

## I.    BACKGROUND

Because Miller challenges only the dismissal of her class-of-one claim, we draw the following facts from her first amended complaint, filed in 2010, and construe the facts in her favor. In September 2004, Miller applied to the City for permission to build a four-unit condominium project on a lot she owned in Monona. Local officials took an active role in the process from the get-go. First, Monona city planner Paul Kachelmeier suggested that Miller purchase a neighboring lot and try to get a larger project approved. Miller purchased the neighboring property, which "was in the midst of a stalled rehabilitation project" and "had sat gutted and va-cant for five years," and resubmitted her application as a re-quest to build a 10-unit project.

---

[1] Miller died after this appeal had been filed, but her estate has been sub-stituted as an appellant, through her son Jesse Miller as personal repre-sentative. *See* Fed. R. App. P. 43(a)(1).

The approval process dragged on throughout 2005. In February, Kachelmeier recommended site planners, architects, and builders for the project, and in August, the City's planning commission suggested changes to Miller's plan. The City also asked for $25,000 for Miller's proposed use of public property during construction. In September 2005, Miller's architect again revised the plans and resubmitted them.

In early 2006, the project hit further snags. First, in January 2006, before the commission accepted Miller's revised plans, an inspection uncovered asbestos on both of her lots. Additionally, in March 2006, Miller's architect informed Kachelmeier that the project had stalled because Miller was in negotiations with neighboring property owners, including Richard Lichtfeld, a former mayor of Monona, about their involvement in a still larger development project.

Later that month, Miller's negotiations with Lichtfeld broke down. Lichtfeld then trespassed on her property at the direction of City officials and took photographs that were used at a planning commission meeting in April 2006 to oppose her project. Two weeks after the meeting, Kachelmeier emailed Monona's then-mayor, Robb Kahl, to inform him about the failed negotiations and that Miller wanted to meet to discuss going forward with her original plan. In May 2006, the planning commission held a public hearing about Miller's project, and afterward, Kachelmeier told Miller that he had spoken with Lichtfeld about her project. Lichtfeld then again trespassed on the property to take additional photographs.

In June 2006, Miller obtained permission from the State of Wisconsin to demolish the buildings and remove the asbestos. In July, her husband drove a truck filled with asbestos to

a local landfill and completed the exterior asbestos removal. But that same month, David Nettum, an independent building inspector working on behalf of the City, issued citations to Miller for creating a public nuisance and working without a proper permit from the City. The City also informed Miller that she needed a local razing permit to demolish the houses. She then obtained a permit allowing demolition through July 30, but shortly afterward, Mark Davis, from the Wisconsin Department of Natural Resources ("DNR"), issued a "stop work" order because of asbestos debris and interior asbestos on Miller's property. On July 20, a professional contractor removed the interior asbestos in compliance with a walk-through inspection with Davis. The next day, Nettum returned and removed boarded windows or doors to inspect the property and take photographs.

Within a week, Lichtfeld again photographed Miller's property and suggested to Monona officials that Miller be ordered to erect a fence around her property. Shortly afterward, at a planning commission meeting, Mayor Kahl informed Miller that she would be required to erect a fence and warned her that a fine of $2,000 per day was being imposed for the code violations on her property, which he described as the City's "number one problem." Two days later, on July 26, the City ordered Miller to erect a fence by July 29, and provided her with a letter from Nettum stating that the property was a public nuisance because of the partial demolition. On July 27, three days before the expiration of her demolition permit, Miller received two more letters from an inspector for the City ordering that the two houses be razed. She received similar letters on August 1 and 2, after her permit expired.

On August 4, 2006, Nettum provided Miller with a con-demnation report that included photographs of the exterior and interior of the two houses on her property. On August 8, Miller finally erected the fence that the City had requested in July. The next day, "the final structural asbestos abatement was completed," and within two weeks, "Waste Manage-ment disposed of asbestos removed in [a] surface scrape." Demolition of the houses was completed sometime shortly after that. In September, Miller tried to contact Davis to con-firm compliance with the DNR orders, but he was unavaila-ble. She sought to move forward on her project without this final approval, but was told by city officials that she had to wait until the DNR approved the asbestos removal and until she paid outstanding fines. Nettum also returned to the property, at the behest of the city attorney, to investigate whether the weeds were too high.

On October 3, 2006, before approval of the asbestos re-moval, Nettum informed Miller that she needed to remove a garage, pier, boat hoist, and driveway from her property. Six days later, Nettum issued Miller citations for not razing these structures and for not filling the lots to the proper grade. Miller obtained a razing permit for the garage within two days and razed the garage within two weeks. In No-vember, Nettum reported to the planning commission that, although debris had remained after the razing, he had noti-fied Miller's contractors, and they had taken care of final compliance, so the final inspection of Miller's property had been satisfactory.

Despite the satisfactory inspection, Kachelmeier and Kahl would not allow Miller to continue construction until her outstanding citations were resolved. In April 2007, a city in-

spector ordered Miller to take down the fence, which she did.

Miller ultimately went to trial in municipal court on her citations for code violations. Although Miller did not attach a copy of the court's decision to her complaint, it is cited in the complaint, and we may take judicial notice of court records. *See Fox v. Am. Alt. Ins. Corp.*, 757 F.3d 680, 684 (7th Cir. 2014). In February 2009, the municipal court issued a decision rejecting three of the four citations against Miller. The court acknowledged that city code requires demolition of appurtenant surfacing and structures no longer useful on the property. *See* Monona, Wis., Code § 15-1-83(b)(1) ("Whenever a building is razed or demolished … all surfacing on such premises shall be removed unless intended to be used in connection with the proposed use of the premises."); *id.* § 15-1-83(b)(4) ("All appurtenant structures on the premises no longer useful for the intended use of the premises shall likewise be razed or demolished and the resulting debris removed from the premises."). But the court reasoned that the garage that Nettum ordered Miller to remove was still useful, at least temporarily, as storage during construction, and similarly, that the driveways, boat hoist, and pier might have been useful in the future. As for the citation for improper grade filling, the court rejected the citation because photographs of the property were too grainy to decide either way. The court upheld the citation for starting demolition without a proper permit, and ordered Miller to pay $671 to the City.

Miller also asked the municipal court to find selective prosecution, but it refused, concluding that, although "some of the efforts to enforce compliance [with the building code]

were unreasonable," the proper avenue for challenging those actions would be to appeal the order of the building inspector. *See* Monona, Wis., Code § 15-1-27 (permitting appeal of building inspectors' decisions to the Zoning Board of Appeals). Moreover, the court concluded that Miller had not pointed to any similarly situated person who had been treated differently.

After the trial, a Monona city official refused to adjust the taxes on Miller's property to reflect the demolitions, even though according to Miller, Lichtfeld's property had a lower tax assessment. Miller contacted the Dane County Treasurer, who had the assessment corrected. Miller says that Monona officials continued to trespass on her property from 2008 through 2010 by parking their cars on a remaining driveway.

In April 2010, Miller filed this lawsuit, alleging that Davis, Nettum, Kahl, Kachelmeier, and the City of Monona had intentionally treated her differently than others similarly situated without a rational basis. For a comparator, she pointed to Kevin Metcalfe—the son of another former Monona mayor—and alleged that he had applied and gained approval for a 45-unit condominium development on the same street as her project without opposition or a fee for use of public property.

In March 2011, in dismissing the class-of-one claim, the district court rejected the Metcalfe project as a suitable comparator for two reasons: first, the Metcalfe project was four-times larger than Miller's, and second, only Miller's project involved removal of asbestos. The court concluded that "both differences would appear relevant to determining whether a renovation project should be given the City's

green light," and that the lack of a suitable comparator prevented a successful class-of-one claim.

Miller's claim of sex-discrimination survived, though the district court noted "just barely"—as did her claims under the Fourth Amendment. But in December 2012, the court granted summary judgment on nearly all of the remaining claims. The court again rejected Metcalfe as a suitable comparator, indicating that its earlier concern about size of the project may have been misplaced but that the problems with citations and demolitions on Miller's property precluded a comparison to Metcalfe's project. The court also emphasized that there was no evidence that Miller had been treated unfairly because of her sex.

The district court allowed Miller to proceed to trial on her claim that Davis violated her rights under the Fourth Amendment by entering her property without a warrant. After a two-day trial in February 2013, a jury found in favor of Davis. On February 13, 2013, the court entered final judgment, with prejudice, in favor of Davis, the City, Kachelmeier, Kahl, and Nettum.

## II.    DISCUSSION

Although the caption on the notice of appeal lists Davis alone as an appellee, Miller did not challenge the judgment in Davis's favor in her opening brief and ultimately opted to voluntarily dismiss her appeal in regard to him. *See* Fed. R. App. P. 42(b). Miller thus limits her challenge to the dismissal of her class-of-one claims against the City, Kachelmeier, Kahl, and Nettum.

### A.      Notice of Appeal

Seizing on the fact that only Davis is named in notice of appeal, the other appellees argue that Miller failed to file a timely appeal as to them. This argument is unpersuasive. It is true that the dictates of Federal Rule of Appellate Procedure 3, which sets forth the required contents of a notice of appeal, Fed. R. App. P. 3(c)(1), are "jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." *Smith v. Barry*, 502 U.S. 244, 248 (1992). But even so, we "liberally construe the requirements of Rule 3," so that even "when papers are technically at variance with the letter of Rule 3, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Id.* (internal quotation marks and alternations omitted); *see Harvey v. Town of Merrillville*, 649 F.3d 526, 528 (7th Cir. 2011) ("[A]s a general rule 'inept' attempts to comply with Rule 3(c) are accepted as long as the appellee is not harmed.") (internal quotation marks omitted). Furthermore, Rule 3(c)(1) does not even technically require specification of the appellees. Rather, the rule requires that notices of appeal specify the parties taking the appeal, designate the judgment or order being appealed, and name the court to which the appeal is taken. The notice here does that, stating that this is an appeal to this court from the final judgment entered on February 13, 2013, which was in favor of not only Davis but also the City, Kachelmeier, Kahl, and Nettum. The notice of appeal thus alerted these appellees to their potential involvement in this appeal, and we are satisfied in our jurisdiction to review the claims against them.

### B.      Ripeness

Appellees also try to head off Miller's class-of-one claim by arguing that it is not ripe because the claim really presents a takings violation under *Williamson County  Regional Planning  Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), which outlines special exhaustion requirements. They emphasize that "[t]his circuit has read *Williamson County* broadly, rejecting attempts to label 'takings' claims as 'equal protection' claims and thus requiring 'ripeness.'" *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 543 (7th Cir. 2008) (internal quotation marks omitted). The district court concluded that it need not address this argument after concluding that Miller failed to state a class-of-one claim, but appellees urge this court to address it as a jurisdictional concern.

The problem with this argument, however, is that ruling on the applicability of *Williamson County* in this situation appears to require an analysis of the merits of the class-of-one claim. As Miller emphasizes, we have recognized an exception to the *Williamson County* analysis for land-use cases that raise "*bona fide* equal protection claims," as when the pleadings allege malicious conduct by a government agent. *Id.* (internal quotation marks omitted). The determination whether Miller's claim is "bona fide" requires us to address the merits, to which we now turn.

### C.      Class-of-One Claim

At the outset, it is important to remember that "federal courts, as we have explained time and again, are not zoning boards of appeal." *CEnergy-Glenmore Wind Farm # 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014) (collecting

cases). For that reason, "[s]tate and local land-use decisions are entitled to great deference when constitutional claims are raised in federal court." *Id*. On top of that, certain forms of state action—as with the approval process and code enforcement at issue here—"involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008). In those situations, "the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted," and "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." *Id*. Thus, even if we disagree with a land-use decision made by local officials, there is no class-of-one claim unless the plaintiff is able to show that there was no rational basis for the officials' actions. *See Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 283 (7th Cir. 2003).

"Normally, a class-of-one plaintiff will show an absence of rational basis by identifying some comparator—that is, some similarly situated person who was treated differently." *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014). To be similarly situated, a comparator must be "identical or directly comparable" to the plaintiff "in all material respects." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010); *accord Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010).

Miller insists on appeal that the Metcalfe project is a suitable comparator. We agree with her on one point: The dis-

trict court's first reason for rejecting the Metcalfe project as a comparator—the relative sizes of the two projects—is not persuasive. If anything, it would seem natural for the larger project to receive extra scrutiny. But the court's second reason—that Miller's property alone required asbestos removal—is sound. By Miller's own description, one of her lots "had sat gutted and vacant for five years," and the buildings on her property required multiple rounds of asbestos removal and eventual demolition, at a cost exceeding $18,000. The Metcalfe project is not alleged to have had any similar problems, and since those concerns are the Monona officials' primary defense for their actions, this difference is critical and makes the Metcalfe project an unhelpful comparator.[2]

The lack of a comparator, however, does not doom Miller's claim. "Unfortunately, the class-of-one standard in this circuit is in flux," *Thayer v. Chiczewski*, 705 F.3d 237, 254 (7th Cir. 2012)—complicated by our split en banc decision in *Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 913 (7th Cir. 2012). But nonetheless, we have repeatedly confirmed that "[p]laintiffs alleging class-of-one equal protection claims do not need to identify specific examples of similarly situated persons in their complaints." *Capra v. Cook Cnty. Bd. of Review*, 733 F.3d 705, 717 (7th Cir. 2013), *cert. denied*, 134 S. Ct.

---

[2] As further reason to reject Miller's argument about comparators, the appellees argue that we should consider that no suitable comparator was presented even as the litigation progressed to summary judgment on the sex-discrimination claim. But the appellees do not cite precedent allowing reliance on a summary judgment ruling in this situation, and the court's decision at summary judgment was tailored to the context of sex discrimination, so we decline to rely on the conclusions in that decision.

1027 (2014); *see Geinosky v. City of Chicago,* 675 F.3d 743, 748 n.3 (7th Cir. 2012) ("Even in a case where a plaintiff would need to identify a similarly situated person to prove his case, … we see no basis for requiring the plaintiff to identify the person *in the complaint.*"). Indeed, as Miller notes, we have recently reversed the rejection of similar claims, despite the lack of a comparator, when plaintiffs were able to exclude rational explanations for why local officials targeted them. *See Swanson v. City of Chetek,* 719 F.3d 780, 785 (7th Cir. 2013); *Geinosky,* 675 F.3d at 747–48.

In *Geinosky,* for example, we allowed the plaintiff to proceed on a class-of-one claim against officers from a single police unit who issued 24 bogus tickets to his Toyota over the course of 14 months. 675 F.3d at 745–48. We emphasized that "[s]ome of the tickets were inconsistent with others received at the same time, implying, for example, that the Toyota was in two places almost at once or was simultaneously double-parked and parked on the sidewalk." *Id.* at 745. We reasoned that this "extraordinary pattern of baseless tickets" amounted to a plausible class-of-one claim, particularly since "[r]eason and common sense provide no answer to why he was targeted that could be considered a legitimate exercise of police discretion." *Id.* at 748.

Similarly, in *Swanson,* we relied on *Geinosky* to reverse the grant of summary judgment against plaintiffs whose neighbor, the local mayor, engaged in prolonged harassment against them after they tried to build a fence between their property and his. 719 F.3d at 784–85. We determined that the mayor's actions—which included entering the plaintiffs' home without permission, abusing his position to delay issuance of a fence permit, shouting at them during a meeting

about the permit, telling the plaintiffs' contractors that they were drug dealers and unlikely to pay, and causing the initiation of a baseless prosecution in municipal court—appeared "illegitimate on their face" and "demonstrate[d] overt hostility." *Id.* at 782, 785. We noted that the plaintiffs had presented evidence of another individual who had gained permission to build a fence, and that although the other fence had distinguishing characteristics, the evidence helped to show that the mayor's treatment of the plaintiffs had departed from the norm. *Id.* at 785.

Miller's situation is distinguishable, however, from *Geinosky* and *Swanson* because the complaint reveals a rational basis—the persistent asbestos and building code problems on her property—for the actions of Monona officials. Even under what we have referred to as "the least demanding standard" articulated in *Del Marcelle*, plaintiffs must allege that state actors lacked a rational basis for singling them out for intentionally discriminatory treatment. *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 775 (7th Cir. 2013), *cert. denied,* 134 S. Ct. 2719 (2014); *see Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). Under this standard, "a class-of-one plaintiff must, to prevail, negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Scherr v. City of Chicago*, 757 F.3d 593, 598 (7th Cir. 2014) (internal quotation marks omitted). It is not enough for a complaint to suggest an improper motive, for "'[a] given action can have a rational basis and be a perfectly logical ac-

tion for a government entity to take even if there are facts casting it as one taken out of animosity.'" *Fares Pawn*, 755 F.3d at 845 (quoting *Flying J,* 549 F.3d at 547). Thus, even at the pleadings stage, "[a]ll it takes to defeat [a class-of-one] claim is a *conceivable* rational basis for the difference in treatment." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1308 (2014).

For that reason, it is possible for plaintiffs to plead themselves out of court if their complaint reveals a potential rational basis for the actions of local officials. *See id.* (affirming dismissal of class-of-one claim when complaint revealed rational basis for treating plaintiff differently notwithstanding facts suggesting officials had potentially improper motives); *Flying J,* 549 F.3d at 547–48 (same). Put differently, "[i]f we can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no." *Fares Pawn*, 755 F.3d at 845.

We are persuaded that, as in *Kopp* and *Flying J,* Miller pleaded herself out of court. It is clear from the first amended complaint that Miller's property contained dilapidated structures requiring multiple rounds of asbestos removal (which took more than half a year to complete), that she delayed her compliance with local code-enforcement efforts, and that a municipal court ultimately held that she had violated Monona's building code by beginning demolition without proper permitting.

Miller contends that, even if Monona officials had a rational reason to target her property, they did so in an irrational way, requiring her to build a fence only to later require her to tear it down and refusing to approve her project until she paid outstanding fines. But unlike in *Geinosky* and

*Swanson*, the complaint alleges rational explanations for these actions. For example, the first amended complaint alleges that "[o]n July 7, 2006, Mark Davis, of the Wisconsin Department of Natural Resources, issued a 'stop work' [order] via fax … for the stated reason of asbestos debris and interior asbestos." First Am. Compl. ¶ 4037. The complaint further alleges that Miller "received an order from the City of Morona to secure her properties with a fence by July 29, 2006" because "[her] property was alleged to be a public nuisance due to partial demolition." *Id.* ¶ 4043. In addition, it is alleged that "[t]he City of Monona refused to allow … Miller's project to go forward without the approval of the asbestos removal by the DNR [Department of Natural Resources]." *Id.* ¶ 4059. And the complaint alleges that the City Planner ordered "that no work be performed until all forfeitures were paid, pursuant to the instruction of the mayor" and that "the project not proceed until all citations were resolved." *Id.* ¶¶ 4055, 4060. By pleading rational bases for the actions of local officials, Miller pleaded herself out of court.

Miller emphasizes the allegations that former mayor Lichtfeld had animus toward her after their failed negotiations and acted to improperly influence city officials. At first glance these allegations bear a striking resemblance to *Swanson*, where a local mayor used his position to harass his neighbors. But unlike in *Swanson*, Lichtfeld was not the mayor at the time of the events here, nor was he named as a party in this lawsuit. Instead, Miller's allegations about Lichtfeld are similar to the theory, recognized in the context of employment discrimination, that permits the animus of a non-party to be imputed to a decisionmaker if the person with animus was the proximate cause of an adverse action against the plaintiff. *See Staub v. Proctor Hosp.*, 131 S. Ct. 1186,

1194 (2011); *Johnson v. Koppers, Inc.*, 726 F.3d 910, 914 (7th Cir. 2013). It would be difficult for Miller to prevail on that theory, however, because the problems with her property were apparent even apart from Lichtfeld's actions, and her allegations suggest that City officials conducted their own investigations of her property through Nettum. *See Johnson*, 726 F.3d at 915 (concluding that "cat's paw" theory was inapplicable when manager conducted investigation that revealed unbiased reason for adverse action); *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 383 (7th Cir. 2011) (holding that cat's paw theory does not apply when decisionmaker conducts a meaningful, independent investigation).

Miller suggests that further discovery would show that Lichtfeld had significant influence over Monona officials because he hired them. But this fact is not included in the first amended complaint. And more importantly, as explained earlier, to succeed on a class-of-one claim, Miller had to do more than merely allege facts casting the actions of Monona officials as being motivated by animus; she needed to exclude possible rational explanations for their actions. *Fares Pawn*, 755 F.3d at 845; *Kopp*, 725 F.3d at 686. Thus, even if Miller could show that Monona officials targeted Miller's property because of Lichtfeld's complaints, because there were potential rational reasons to target Miller's derelict property, we are persuaded that the district court correctly granted appellees' motion to dismiss the class-of-one claim.

Miller also emphasizes that three of the four citations issued by inspector Nettum were rejected at trial. But it is crucial to examine why those citations were rejected. The municipal court noted that the City bore the burden of produc-

ing clear and convincing evidence of Miller's code viola-
tions, and that for the citation related to grade filling, the
City failed to meet its burden because it provided only
grainy photographs as proof. The other citations primarily
rested on Nettum's understanding that appurtenant struc-
tures on Miller's land—e.g., the garage, boat hoist, and
driveways—had no useful purpose after Miller razed the ex-
isting buildings. Although the municipal court ultimately
disagreed with Nettum's decision, his actions seem a far cry
from the entirely baseless citations in *Swanson* and *Geinosky*.
Moreover, unlike either of those cases, here the municipal
court upheld one of the citations, for violating the building
code by beginning demolition without a proper permit, con-
firming that Nettum had a legitimate basis for citing Miller's
property. Finally, Nettum points out that not only did his job
necessarily involve discretionary decisionmaking but that, as
shown by the municipal court decision, it was not him but
an attorney for the City who prosecuted the citations
Nettum issued. Thus, in light of the great deference we af-
ford to discretionary local decisions regarding land use,
*see CEnergy-Glenmore*, 769 F.3d at 487; *Discovery House*, 319
F.3d at 283, and the conceivable rational reasons for
Nettum's actions, we agree with the district court that the
class-of-one claim against Nettum fails.

　　Accordingly, the judgment of the district court is
AFFIRMED.