In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3173

JOSEPH CONLEY,

*Plaintiff-Appellant,*

*v.*

KIMBERLY BIRCH,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:11-cv-13 — **Stephen C. Williams**, *Magistrate Judge*.

ARGUED MAY 28, 2015 — DECIDED AUGUST 6, 2015

Before FLAUM, KANNE, and SYKES, *Circuit Judges*.

FLAUM, *Circuit Judge*. Joseph Conley appeals a district court's grant of summary judgment to prison physician Dr. Kimberly Birch on Conley's claim that Dr. Birch displayed deliberate indifference to his serious medical needs by declining to promptly order an x-ray of his injured hand. On December 24, 2009, Conley's hand was examined by a prison nurse, who described Conley's symptoms to Dr. Birch over the phone. Those symptoms included throbbing pain, severe

swelling, discoloration, and loss of function throughout the entire hand; the nurse concluded in his treatment notes that Conley suffered from a "possible/probable fracture." Dr. Birch ordered a regimen of ibuprofen and ice but did not order an x-ray until almost five days later. The x-ray revealed that Conley's hand was indeed fractured, and years later, he continues to suffer from chronic pain and limited mobility. Based on the information in the record, and drawing all inferences in the light most favorable to Conley, we conclude that a reasonable jury might find that Dr. Birch strongly suspected that Conley's hand had been fractured, yet refused to take reasonable measures to evaluate or treat his injury. We therefore reverse the district court's grant of summary judgment in favor of Dr. Birch and remand the case for trial.

## I. Background

On December 22, 2009, Joseph Conley, then an inmate at the Vienna Correctional Center, was involved in a physical altercation with a fellow inmate, who swung a combination lock at Conley's head. Conley blocked the hit with his right palm but on impact, he "heard a pop" and felt excruciating pain in his hand. Over the course of the next two days, Conley's hand swelled and his range of motion became severely limited. Conley made repeated requests for medical attention, which were largely ignored by various Vienna employees, but which are not relevant to this appeal.[1]

---

[1] These employees—June Daymon, Tracie Stanford, and Carol Fauless— were joined as defendants in the instant suit, and the district court denied their motions for summary judgment on Conley's claims of deliberate indifference. Daymon, Stanford, and Fauless did not participate in this appeal.

On the evening of December 24, Conley showed his injured hand to yet another Vienna employee, Lieutenant Brian Felton. By this point, Conley's hand had "swollen up like a boxing glove real big." Felton escorted Conley to the health care unit. There, Conley was examined by nurse Tracy Potts. During the examination, Potts filled out two medical forms, an "Offender Injury Report" and an "Offender Outpatient Progress Note." In the "Objective Findings" section of the Injury Report, Potts observed: "right hand swollen, discolored, all fingers and thumb involved with palm bruising also. Mild pain." In the "Evaluation of Injury" section, Potts wrote "possible/probable fracture." On the Progress Note, Potts recorded additional observations: he indicated that Conley suffered from "throbbing" and "severe pain or swelling, discoloration, [and] limited motion." He specified that Conley was experiencing "limited movement of all four fingers and thumb," and that Conley's pain was a "2–3" on a 1–10 scale. Finally, Potts circled the word "Fracture," but placed a question mark next to that diagnosis. Potts's notes do not indicate any gross deformity or signs of a vascular or neurological deficit.

After examining Conley, Potts placed a call to defendant Kimberly Birch, the sole physician assigned to the Vienna facility, who was at her home celebrating the Christmas holiday. Neither Potts nor Dr. Birch has any independent recollection of the contents of this phone call, and Conley did not overhear the conversation. The parties agree, however, that it was standard protocol for Potts to share his full assessment with Dr. Birch during a telephone referral. After speaking with Dr. Birch, Potts gave Conley an ice pack and ibuprofen. According to Conley, Potts explained that "there was nothing he could do [for Conley] because of the holidays,"

and that "all he could do" was recommend ice and ibuprofen. (Potts had independent authority to provide patients with painkillers and ice but only Dr. Birch had the authority to order x-rays, which she could do over the phone.) Dr. Birch did not report to work on Christmas Day and, although she does not recall, she concedes that she may not have returned to work until December 29, 2009. She examined Conley in person the morning of December 29—some four-and-a-half days after Potts's initial evaluation of Conley's injury—and upon examination, ordered an x-ray.

Conley does not challenge any of Dr. Birch's subsequent actions or omissions, but a brief recital of successive events is informative nonetheless. X-rays for Vienna inmates are performed offsite at the Shawnee Correctional Center and are provided by Wexford Health Sources, Inc. Inmates in need of x-rays are transported to Shawnee by van, typically twice per week, although Wexford has conceded that the availability of x-ray technicians may have been limited over the holidays. Conley's x-ray was scheduled for January 6, 2010. However, it appears that on the morning of January 6, he signed a refusal of treatment form in which he specifically declined the scheduled x-ray. Conley claims that Nurse Jeffery Brown presented the form to him without explanation and that Conley signed the form without reading it. When Dr. Birch saw Conley later that same morning, Conley was confused as to why he had not received his x-ray. He was informed that he had signed a refusal form and that the van transporting inmates to Shawnee had already left. Dr. Birch then re-ordered the x-ray and refilled Conley's pain medication. Conley did not see Dr. Birch again. He was transferred to Big Muddy Correctional Center on January 13, 2010 and eventual x-rays confirmed that his hand was broken. Conley

suffered permanent damage from the injury: he continues to experience chronic pain and frequent swelling, and further suffers from a weakened grip and permanent extension lag (the inability to fully straighten his finger).

On January 7, 2011, Conley brought suit under 42 U.S.C. § 1983, alleging that various defendants violated his Eighth Amendment rights by demonstrating deliberate indifference to his serious medical needs in the days following his injury. Defendants included Dr. Birch, Wexford, and Illinois Department of Corrections employees Brown, Daymon, Stanford, Fauless, Penny George, Michael Randle, and John Cox. The district court dismissed Conley's claims against Randle and Cox, and all remaining defendants moved for summary judgment. The court entered summary judgment in favor of Brown, George, and Wexford, and denied summary judgment with respect to Daymon, Stanford, and Fauless.

With regard to his claim against Dr. Birch, Conley argued that, based on her conversation with Potts on the evening of December 24, 2009, Dr. Birch strongly suspected that Conley's hand was fractured. And, in declining to either seek prompt confirmation of Conley's condition (by ordering an x-ray) or provide precautionary treatment (immobilization with a splint), she displayed deliberate indifference to his medical needs. Conley deposed Dr. Birch, who opined that, if a hand is described as discolored with all fingers swollen, that injury may be a mere contusion rather than a fracture. She further explained that it was her custom to defer to the professional judgment of the reporting nurse in determining whether an x-ray was necessary. Finally, Dr. Birch acknowledged that, in the case of a broken hand, callus formation (the process by which the bone starts to fuse and repair it-

self) begins "very quickly"—that is, within a matter of days. Conley's medical expert, Dr. Bruce Schlafly, was also deposed. He explained that, given a "diagnosis from the nurse of possible or probable fracture of the hand," "the appropriate treatment then would have been to apply a splint and order X-rays." He also stated that "it would have been reasonable to obtain the X-rays of the right hand within three to five days" of Conley's December 24 examination.[2]

After reviewing the record, the district court determined in a one-paragraph analysis that no reasonable jury could conclude that Dr. Birch had acted with deliberate indifference. The court concluded that while providing only ice and ibuprofen to Conley on December 24 was "a conservative course of treatment," it was nonetheless appropriate for someone "complaining of pain and swelling." *Conley v. Birch*, No. 11-cv-13, 2013 WL 6229960, at *8 (S.D. Ill. Dec. 2, 2013). While the district court admitted that the situation was "certainly unfortunate," it determined that, because Conley's symptoms could just as easily have indicated a contusion, his fracture "was not so obvious to Birch … that the failure to immediately [order an x-ray] rises to the level of deliberate indifference." *Id.* Conley appeals.[3]

---

[2] Recall that while Dr. Birch ordered an x-ray within five days of December 24, that x-ray was not scheduled to be performed until January 6, 2010.

[3] We recruited pro bono counsel to represent Conley on appeal and now thank John M. Robinson of Jones Day for his very capable assistance to his client and the court.

## II. Discussion

We review the district court's grant of summary judgment to Dr. Birch de novo. *Johnson v. Koppers, Inc.*, 726 F.3d 910, 914 (7th Cir. 2013). In doing so, we must examine the record in the light most favorable to Conley as the nonmoving party, resolving all evidentiary conflicts and drawing all reasonable inferences in his favor. *Id.* Summary judgment is appropriate only if Dr. Birch has demonstrated that "there is no genuine dispute as to any material fact" and that she "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A prison official may be found in violation of an inmate's Eighth Amendment right to be free from cruel and unusual punishment if she acts (or fails to act) with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Supreme Court has interpreted the "deliberate indifference" standard to require a "reckless[] disregard[]" of a substantial risk to inmate health. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). "Deliberate indifference" demands more than a showing of mere negligence: "an official's failure to alleviate a significant risk that [s]he should have perceived but did not, while no cause for commendation, cannot … be condemned as the infliction of punishment." *Id.* at 838.

To survive summary judgment on his claim of deliberate indifference, Conley must produce evidence suggesting that his injury amounted to an "objectively serious medical condition," and that Dr. Birch was "aware of the condition and knowingly disregarded it." *Ortiz v. Webster*, 655 F.3d 731, 734 (7th Cir. 2011). That said, Conley's fracture need not yet have been diagnosed as such to have demanded action on the part of Dr. Birch. An official may not escape liability by "re-

fus[ing] to verify underlying facts that [s]he strongly sus-pect[s] to be true." *Farmer*, 511 U.S. at 843 n.8. If Conley has put forth sufficient evidence to permit a reasonable jury to conclude that Dr. Birch's "inaction substantially and unrea-sonably delayed necessary treatment," then he has done enough to withstand summary judgment. *Ortiz*, 655 F.3d at 735.

Applying this standard to the facts of the instant case, we believe a reasonable jury could find that, based on the in-formation conveyed to her in her December 24 telephone conversation with Nurse Potts, Dr. Birch strongly suspected that Conley's hand was fractured. Because neither Potts nor Dr. Birch has any independent recollection of their Decem-ber 24 conversation, Potts's treatment notes are the most probative evidence of the information that Potts transmitted to Dr. Birch regarding Conley's injury. (We assume that Potts relayed the full extent of his observations to Dr. Birch during their call, as all parties concur that this was standard practice for telephone referrals at Vienna.) These treatment notes suggest a serious injury: Conley suffered from "severe" swelling despite the fact that his injury occurred two days prior; he experienced loss of function and mobility extend-ing to all four of his fingers and his thumb, even though the blow was to his palm only; his hand was discolored; and, most importantly, Potts described the injury as a "possi-ble/probable fracture." Further, while Dr. Birch insisted in her deposition that Conley's symptoms could have indicated a contusion rather than a fracture, we think it highly implau-sible that Potts would have telephoned Dr. Birch at her home, after working hours, on Christmas Eve, if he suspect-ed that Conley's hand was merely bruised.

Considering this evidence in the light most favorable to Conley, a jury might reasonably find that Dr. Birch concluded that Conley's hand was probably fractured. Of course, we cannot be certain of the conclusion that Dr. Birch actually drew. But state of mind is an "inquiry that ordinarily cannot be concluded on summary judgment," *Mkt. St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 597–98 (7th Cir. 1991), and the record suggests that Potts communicated information sufficient to lead Dr. Birch to strongly suspect that Conley had suffered a fracture. Whether she in fact made that inference is a question for trial.

Our inquiry does not end there, however. Now that we have determined that Dr. Birch may well have been aware of Conley's "objectively serious medical condition," we must also determine whether a reasonable jury might conclude that she "knowingly disregarded" that condition. *Ortiz*, 655 F.3d at 734. Dr. Birch did not direct Potts to entirely withhold treatment from Conley: after all, Conley was provided ice and ibuprofen, and was informed that Dr. Birch would examine him when she returned to work. The relevant inquiry, then, is whether the provision of only painkillers and ice to an inmate suffering from a suspected fracture constitutes deliberate indifference. On this issue too, Conley has introduced enough evidence to create a dispute of material fact.

We have explained that while the "deliberate indifference" standard "does not permit claims for mere negligence or claims alleging that a reasonable medical judgment unfortunately led to a bad result, a prisoner is not required to show that he was literally ignored." *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000) (citations omitted). Therefore, Conley may demonstrate that Dr. Birch was deliberately in-

different even though she provided some minimal treatment. *See id.* ("If knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell, a jury could find deliberate indifference … ."). In the opinion of Conley's medical expert, the "appropriate" treatment for a probable fracture would have been to immobilize Conley's hand using a splint and to promptly order x-rays, to be taken within three to five days. Dr. Birch, of course, did not recommend immediate immobilization and, although she ordered an x-ray approximately five days after learning of Conley's injury, his x-ray was not slated to be performed for an additional eight days (January 6, 2010). Although there is no suggestion that Dr. Birch herself scheduled the x-ray, it is reasonable to infer—based on Vienna's standard practice of releasing inmates for x-rays only twice per week (and less frequently over the holidays)—that Dr. Birch knew that it would be some time before Conley received his x-ray.

Additional support for the contention that the treatment Conley received was insufficient can be found in Conley's deposition testimony. Conley stated that when Potts returned from speaking with Dr. Birch on December 24, he lamented that "there was nothing he could do [for Conley] because of the holidays," and that "all he could do" was recommend ice and ibuprofen. This statement suggests that Potts believed that the severity of Conley's condition necessitated more drastic treatment, but that Potts's hands were tied as he had independent authority only to provide painkillers and ice. Based on this evidence, we believe that a reasonable jury could conclude that, in refusing either to promptly evaluate Conley's condition (by ordering an x-ray or performing an in-person exam) or to provide appropriate pre-

cautionary treatment (by immobilizing his hand), Dr. Birch acted with deliberate indifference to Conley's serious medical needs.

Our conclusion that Conley's claim of deliberate indifference survives summary judgment does not necessarily indicate that Conley is likely to win at trial. There is evidence pointing in both directions, and while a jury might draw inferences favorable to Conley, the record also permits the opposite inferences. After all, Potts's treatment notes convey some uncertainty as to Conley's diagnosis, as Potts described Conley's injury as a "*possible*/probable fracture" and a "? Fracture." Also, though his hand was severely swollen, Conley was experiencing only mild pain (a "2–3" on a 1–10 scale) at the time of his visit with Potts. Because Potts customarily shared his full assessment during a telephone referral, we can assume that these observations were communicated to Dr. Birch, along with a report of Conley's more serious symptoms. Further, because Dr. Birch stated in her deposition that she generally deferred to the professional judgment of the reporting nurse in determining whether to order an x-ray, a jury might conclude that Potts did not feel that an x-ray was necessary. Finally, considering that Dr. Birch would have been able to order an x-ray over the phone in a matter of minutes, doing so likely would not have interfered with her holiday plans; as a result, Conley's proffered motive for Dr. Birch's decision not to order an x-ray—that is, so that she would not be forced to interrupt her Christmas vacation—appears dubious.

However, these are factual questions that should be left to the judgment of a jury. Here, rather than viewing all facts in the light most favorable to Conley, the district court "im-

permissibly resolved questions of material fact in favor of the defendant[] and relied on those to determine that the prison medical staff did not show deliberate indifference." *Sherrod*, 223 F.3d at 611. While "deliberate indifference" is indeed a high bar, Conley has introduced evidence sufficient to permit a jury to conclude that Dr. Birch acted with reckless disregard for his medical needs.

On a final note, Dr. Birch also contends that Conley cannot demonstrate that her delay in ordering an x-ray caused his injury. We have held that, "[i]n cases where prison officials delayed rather than denied medical assistance to an inmate," the plaintiff must "offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) (citation and internal quotation marks omitted). Here, thirty-five days passed between the date on which Conley fractured his hand (December 22, 2009), and the date on which that fracture was diagnosed (January 26, 2010); however, Conley blames Dr. Birch for fewer than five days of this lengthy delay. Thus, while Dr. Birch appears to concede that the overall delay may have contributed to the severity of Conley's injury, she argues that Conley has made no showing of what harm, if any, can be specifically attributed to her relatively minor role in delaying his diagnosis.

As an initial matter, we have determined that "causation is normally a matter for the jury." *Collins v. Am. Optometric Ass'n*, 693 F.2d 636, 640 (7th Cir. 1982). But more importantly, Dr. Birch acknowledged in her deposition that, following a fracture, callus formation begins to take place "very quickly"; presumably, if bones fuse together improperly, perma-

nent injury may result. We therefore find Dr. Birch's uncontroverted testimony sufficient to permit a jury to conclude that, by declining to order an x-ray of Conley's hand at such a crucial point in the healing process, she exacerbated his lasting injuries.

### III. Conclusion

For the foregoing reasons, we REVERSE the district court's grant of summary judgment to Dr. Birch and REMAND the case for further proceedings consistent with this opinion.