In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1848

AMIT SINHA,

*Plaintiff-Appellant,*

*v.*

BRADLEY UNIVERSITY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:18-cv-01319-MMM-JEH — **Michael M. Mihm**, *Judge.*

ARGUED NOVEMBER 6, 2020 — DECIDED APRIL 26, 2021

Before ROVNER, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Amit Sinha appeals the rejection
of his retaliation claims against his employer, Bradley Univer-
sity, under the Age Discrimination in Employment Act. One
of Sinha's claims falls short for lack of proximate cause under
the cat's paw theory of liability, and the other claim is time-
barred. So we affirm the district court's grant of summary
judgment.

**I**

**A**

Bradley University in Peoria, Illinois, has five colleges, with the dean of each reporting to Walter Zakahi, the University Provost and Senior Vice President for Academic Affairs. In this role, Zakahi has the authority to remove department chairs and make promotion decisions based, in part, on recommendations by the deans. During the relevant period, Darrell Radson served as the dean of Bradley's college of business.

In August 2008, Amit Sinha began teaching in the Finance and Quantitative Methods ("FQM") department at the business college.[1] Four years later, he was promoted to associate professor and elected chair of the department. He remained department chair until 2016. Sinha was then removed as department chair and denied promotion to full professor. His claims relate to both decisions.

*Denial of Promotion.* Sinha applied for promotion to full professorship three times and was twice rejected. He first applied in August 2016. Radson declined to recommend Sinha for promotion because he lacked the requisite five years of teaching experience and did not present "rare and extraordinary circumstances" for an exception. Upon conducting his own review of Sinha's application materials, Zakahi decided to deny Sinha's promotion application, and on March 1, 2017, Radson relayed Zakahi's decision to Sinha.

---

[1] For all periods relevant to this case, Sinha was at least forty years of age as statutorily required to bring an age-discrimination claim under the ADEA. 29 U.S.C. § 631(a).

In the fall of 2017, Sinha submitted his second promotion application. This too was denied. Zakahi explained to Sinha that all five of the college deans voted against his application because he "did not attempt to make a case for his promotion." For example, Sinha failed to include in his application a discussion of his teaching philosophy, description of his research programs, and external reference letters—all of which were important and relevant for the university's promotion decision.

But Sinha persisted. He reapplied in the fall of 2018 and was promoted to full professor soon after.

*Removal as Chair.* While Sinha applied for a promotion, he was also under a Title IX investigation. During the fall of 2016 Patricia Hatfield, an FQM department faculty member, filed a grievance against Sinha and alleged sex discrimination. A faculty grievance committee conducted "informal information gathering" but declined to pursue formal grievance proceedings, fearing that the process would be "drawn out" and could lead to a lawsuit. The committee instead informed the University President Gary Roberts, who then notified Zakahi, about the "dysfunctionality" and "schismatic factionalism" within the FQM department. "[O]ne option to resolve Professor Hatfield's grievance" proposed by the committee was to remove Sinha as department chair.

Zakahi then called for a formal internal Title IX investigation, which did not reveal evidence sufficient for sex discrimination. But the Title IX investigators, like the faculty grievance committee, reported on "the dysfunctional environment" within the FQM department and urged Zakahi to "implement changes that will address and mitigate the issues." Informed by his years of experience as a university

administrator, Zakahi decided to address the "problems of culture and toxicity" in the FQM department by changing the leadership so that "the department [can] work in a different way." So on March 22, 2017, Zakahi removed Sinha as department chair to put "different leadership in place."

**B**

Sinha filed discrimination charges with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR").

Sinha filed his first charge with both agencies on July 31, 2017. In it he alleged that on March 22, 2017, Bradley removed him as department chair, in part, to retaliate against him for declining to carry out age-discriminatory policies against older employees. Bradley removed him as chair, Sinha claimed, because he refused to implement Radson's requests to "make the jobs of older faculty less desirable" so that they can retire. Notably, the first charge did not mention any other adverse employment actions beside his removal as chair. Sinha filed his second charge with both agencies on February 28, 2018. This charge raised a single issue: that Bradley denied his September 22, 2017, promotion application "in retaliation for filing a charge of discrimination with the IDHR/EEOC."

Sinha then sued, alleging that Bradley discriminated against him on the basis of sex in violation of Title VII (Count I) and retaliated against him for opposing the FQM department's purported age discrimination policy in violation of the ADEA (Count II). The parties subsequently agreed to dismiss Count I, so all that remained were ADEA claims in Count II.

In his complaint, Sinha alleged that Bradley unlawfully retaliated against him for declining Radson's requests to implement age-discriminatory policies against older faculty members. The university did so, Sinha asserted, both by removing him as department chair and by denying his application for promotion. The first claim centered on an assertion that Radson influenced Zakahi, the ultimate decisionmaker, to remove him as chair by "concoct[ing] a false narrative about Sinha." Sinha argued that Radson injected this narrative into the faculty grievance committee and Title IX investigations and even "generated Hatfield's complaint" against him. He further contended Zakahi "relied on Radson's lies" to conclude that "Sinha was the cause of the department's dysfunction and should be removed."

But the district court disagreed. It found that neither Zakahi nor Radson harbored discriminatory animus against Sinha. It also determined there was no evidence Radson proximately caused Zakahi's decision to remove Sinha. Accordingly, the district court granted summary judgment for Bradley on this claim.

The district court went on to conclude that Sinha's denial of promotion claim was time-barred. It pointed to paragraph 25 of Sinha's complaint in which he specified as the basis for his retaliation claim his promotion application from 2016, not 2017. This, the court recognized, was problematic: although Sinha learned of the denial of his August 2016 promotion application on March 1, 2017, he did not file an administrative charge with any mention of a promotion denial until February 28, 2018—364 days later. The district court found that he had failed to file an EEOC charge within 300 days of the denial of his 2016 application, as required to bring an ADEA claim.

Sinha attempted to cure this defect by claiming that the mention of his 2016 promotion application was a "scrivener's error" and that he had actually meant to base his complaint on the denial of his 2017 promotion application. The district court rejected this argument, emphasizing that Sinha had "ample opportunities" to amend his supposed error and yet "no objection was raised, and no attempt to clarify was made" in his deposition testimony. The district court granted summary judgment for Bradley on this claim too. Sinha then timely appealed to this court.

## II

We review de novo Sinha's appeal of the district court's grant of summary judgment for Bradley on these two ADEA retaliation claims. *Igasaki v. Illinois Dep't of Fin. & Prof. Reg.*, 988 F.3d 948, 955 (7th Cir. 2021). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). At this stage, we consider "all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action *because of* her age." *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 720 (7th Cir. 2018) (emphasis in original) (quoting *Carson v. Lake Cnty.*, 865 F.3d 526, 533 (7th Cir. 2017)). Conclusions must be supported by specific facts, otherwise they "are not sufficient to avoid summary judgment." *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016) (internal quotation marks omitted).

## A

First up is Sinha's claim that Bradley violated the ADEA by removing him as department chair. The ADEA protects

workers who are at least 40 years of age from age-based employment discrimination and prohibits employers from retaliating against an employee for opposing such discrimination. 29 U.S.C. §§ 631(a), 623(d). A plaintiff suing under the ADEA "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). He may survive summary judgment by presenting sufficient evidence "to create a triable issue" on whether the decisionmaker had a discriminatory motivation for the adverse employment action. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 393 (7th Cir. 2010).

An ADEA plaintiff may prevail—even without showing that the ultimate decisionmaker harbored discriminatory bias—by invoking the cat's paw theory of liability. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011) (explaining the cat's paw theory).[2] This theory is invoked in employment discrimination contexts when a biased supervisor, or a biased subordinate, "who lacks decision-making power uses the formal

---

[2] In *Staub*, Justice Scalia explained:

> The term "cat's paw" derives from a fable conceived by Aesop, put into verse by La Fontaine in 1679, and injected into United States employment discrimination law by Judge Posner in 1990. See *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (CA7). In the fable, a monkey induces a cat by flattery to extract roasting chestnuts from the fire. After the cat has done so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing. A coda to the fable (relevant only marginally, if at all, to employment law) observes that the cat is similar to princes who, flattered by the king, perform services on the king's behalf and receive no reward.

562 U.S. at 415 n.1.

decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Johnson v. Koppers, Inc.*, 726 F.3d 910, 914 (7th Cir. 2013) (internal quotation marks omitted); *see also Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 570 (7th Cir. 2017) (stating that under the cat's paw theory "the biased subordinate's actions are evidence of discrimination"). To show age-based discrimination under this theory, the plaintiff must present evidence that "the biased subordinate actually harbored discriminatory animus" against him and that the subordinate's scheme proximately caused the adverse employment action. *Robinson v. Perales*, 894 F.3d 818, 832 (7th Cir. 2018) (quoting *Johnson*, 726 F.3d at 914). Because the cat's paw theory requires a showing of both discriminatory animus *and* proximate causation, we need not address both prongs if the employee makes an insufficient showing on one. *Cf. Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 604 (7th Cir. 2014) (noting that an employee suing under the cat's paw theory must satisfy both animus and causation prongs).

That the ultimate decisionmaker conducted an independent investigation and rendered the final decision does not automatically immunize an employer from cat's-paw liability. *Staub*, 562 U.S. at 421. The Supreme Court has made clear that "proximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged, and excludes only those links that are too remote, purely contingent, or indirect." *Id.* at 419 (cleaned up). A biased supervisor may still proximately cause the adverse employment action if the ultimate decisionmaker's independent investigation takes the supervisor's report "into account without determining that the adverse action was, apart from the supervisor's

recommendation, entirely justified" or if the investigation "relies on facts provided by the biased supervisor." *Id.* at 421.

But the decisionmaker need not be "a paragon of independence." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 370 (7th Cir. 2019) (quoting *Martino v. MCI Commc'ns Serv., Inc.*, 574 F.3d 447, 453 (7th Cir. 2009)). An employer may avoid cat's-paw liability if "the decisionmaker is not wholly dependent on a single source of information and conducts her own investigation into the facts relevant to the decision." *Id.* So long as "the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action … the employer will not be liable." *Staub*, 562 U.S. at 421.

Under Sinha's cat's paw theory, Radson, the allegedly biased supervisor, exercised controlling influence on the decision of Zakahi, the ultimate decisionmaker. In particular, Sinha asserts that Radson invented a false narrative about him that prompted Zakahi to remove him as chair. To prevail, Sinha must show that Radson actually harbored discriminatory animus and that his "input was a proximate cause" of the adverse employment action. *Nichols*, 755 F.3d at 604. We resolve Sinha's removal-as-chair claim on this causation prong.

Sinha cannot demonstrate that Radson proximately caused his removal as chair because Zakahi drew a conclusion independent of any alleged influence by Radson. In his deposition, Zakahi explained that he removed Sinha based on the faculty grievance committee report and the Title IX investigation report, both of which highlighted the toxic and dysfunctional culture within the department. Sinha asserts Radson tainted these reports because he was among those interviewed. We disagree, especially given that the Title IX

investigators also interviewed seven faculty members, including Sinha and Hatfield, and two administrators. Moreover, Zakahi testified that he also relied on his experience as a university administrator to conclude that the FQM department would benefit from new leadership. The record shows that Zakahi requested the Title IX investigation and rendered an independent decision to remove Sinha as chair that did not singularly or wholly depend on Radson. Sinha therefore fails to meet his burden of showing that Radson's alleged animus proximately caused his removal as chair. We conclude that the district court correctly denied this claim.

**B**

Now to Sinha's denial-of-promotion claim. To bring an ADEA suit, an employee must first file a discrimination charge within 300 days of the alleged unlawful employment action. 29 U.S.C. § 626(d)(1)(B). The limitations clock begins running when the employer renders a "final, ultimate, [and] non-tentative" decision and the employee receives "unequivocal notice of it." *Wrolstad v. Cuna Mutual Ins. Soc'y*, 911 F.3d 450, 456 (7th Cir. 2018) (alteration in original) (internal quotation marks omitted). Meeting this 300-day requirement is critical because "[a] failure to file a timely charge will bar a later suit." *Casteel v. Exec. Bd. of Local 703*, 272 F.3d 463, 466 (7th Cir. 2001).

The district court correctly concluded that Sinha's denial-of-promotion claim is time-barred. In his complaint, Sinha alleged employment discrimination based on his 2016 promotion application. He made no mention of his 2017 application. Since Sinha's 2016 promotion application was denied on March 1, 2017, he had until December 26 of that year to file an EEOC charge on that claim. Sinha acknowledged he had not

done so. The only way then that Sinha could possibly pursue a denial-of-promotion claim is if he had based his allegation on his 2017 promotion application. But he failed to do so. Sinha therefore cannot proceed with this claim because he failed to timely file an EEOC discrimination charge on the 2016 application.

To save this claim, Sinha argues he made a "scrivener's error" when he omitted the denial of his 2017 promotion application from his complaint. He characterizes this portion of his complaint as a typo—that he "mistakenly typed 2016 instead of 2017 when referencing [his] application denial." This too falls short.

*Black's Law Dictionary* defines "scrivener's error" as synonymous with "clerical error." And a "clerical error" is one that results from "a minor mistake or inadvertence" such as "[a] typist's technical error that can be rectified without serious doubt about the correct reading." BLACK'S LAW DICTIONARY (11th ed. 2019); *see, e.g.*, *Holloway v. United States*, 526 U.S. 1, 19 n.2 (1999) (Scalia, J., dissenting) (noting that a "scrivener's error" is one courts "may properly correct"). We recognize a mistake as a scrivener's error if it is "one of transcription," not of "legal knowledge or analysis." *United States v. Gibson*, 356 F.3d 761, 766 n.3 (7th Cir. 2004).

We reject Sinha's attempt to characterize paragraph 25 of his complaint as a mere scrivener's error. The district court correctly noted that Sinha failed to amend or clarify his complaint despite ample opportunities to do so. Sinha acknowledged in his deposition testimony that he based his denial-of-promotion claim on his 2016 promotion application:

Q: Your position, however, is that you should have been promoted earlier, correct?

A: That is correct.

Q: And your position *in this case* is your 2016 application should have been allowed, correct?

A: That's correct.

R. 37-1 at 43 (emphasis added). As early as its answer, Bradley challenged the timeliness of Sinha's denial-of-promotion claim. In that responsive pleading, Bradley acknowledged that Sinha had timely filed his EEOC charge as to his removal-as-chair claim but disputed the timeliness of his denial-of-promotion claim. To cinch the matter, the discovery documents on this claim focused on his 2016 application, not the 2017 application. Despite the notice and at least three chances to correct what he alleges was a scrivener's error, Sinha failed to amend his complaint. Indeed, Sinha did not address the alleged scrivener's error until his response to Bradley's summary judgment motion. We therefore conclude that Sinha's denial-of-promotion claim is time-barred.

### III

For these reasons we AFFIRM the judgment of the district court.