In the

# United States Court of Appeals
## for the Seventh Circuit

No. 23-1802

DARELL D. BURTON,

*Plaintiff-Appellant,*

*v.*

WILL COUNTY SHERIFF'S MERIT COMMISSION,
WILL COUNTY SHERIFF'S OFFICE, and WILL COUNTY, ILLINOIS,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19-CV-03875 — **John J. Tharp, Jr.**, *Judge.*

ARGUED JANUARY 10, 2024 — DECIDED MAY 22, 2026

Before SYKES, HAMILTON, and LEE, *Circuit Judges.*

SYKES, *Circuit Judge.* The Will County Sheriff's Office uses a merit-selection process to hire new deputy sheriffs in accordance with Illinois and local law. Applicants must be certified by the Will County Sheriff's Merit Commission before the sheriff may consider them for appointment. The application process is rigorous and includes a background check.

Darell Burton applied for deputy sheriff but did not pass the background check. His then-employer told the Merit Commission that he was not a dependable employee, did not work well with others, would not be rehired in his current position as a railroad signalman, and was not recommended for hire as a deputy sheriff. Based on this negative employment reference, the Commission removed him from the certification process.

Burton, who is black, sued the Merit Commission, the Sheriff's Office, and Will County under Title VII of the Civil Rights Act of 1964. He alleged that he was removed from the certification process because of his race. But he did not produce evidentiary support for this claim, so the district judge entered summary judgment for the defendants.

We affirm. No evidence suggests that Burton's race played any role in the Merit Commission's decision. And nothing in the record could support an inference that the Commission's reason for removing Burton from the certification process—his negative professional reference—was a pretext for racial discrimination.

## I. Background

The Will County Sheriff's Merit Commission is a five-member body appointed by the sheriff to oversee the merit-selection process for appointment of new deputy sheriffs. Established in accordance with the Illinois Counties Code, the Commission receives and screens applications for deputy sheriff and certifies candidates for inclusion on a list of applicants who may be considered when positions become available. *See generally* 55 ILL. COMP. STAT. 5/3–8001, *et seq.*

Applicants must be certified by the Merit Commission before the sheriff may hire them as deputies.

As expected for a job in law enforcement, the certification process is lengthy and rigorous. It includes successive steps: a short-form application, a written exam, a physical agility test, a long-form application, a psychological evaluation, a polygraph test, a formal background investigation, and ultimately, an interview with the Merit Commission.

The formal background investigation is the step at issue here. The Merit Commission has only two full-time employees and relies on investigators in the Sheriff's Office to carry out background investigations. At the beginning of this step in the process, the Commission's staff solicits information from an applicant's current employers, former employers, and personal references by mailing out reference forms. When these so-called "mail out" inquiries are returned, the applicant's file is assigned to an investigator in the Sheriff's Office, who then conducts a thorough background investigation.

The investigator's duties include contacting any employers who did not respond to the "mail out" reference forms. When the investigation is complete, the investigator provides a handwritten summary to the Commission's staff using a template form, and a staff member then types it up for inclusion with other background-investigation material in the applicant's file.

Many applicants never advance to the interview stage based on concerns that arise earlier in the certification process. If negative information surfaces at any step in the process, the matter is presented to the Merit Commission for a

decision whether to remove the applicant from further consideration. Colloquially known as "red flags," these negative datapoints include (among other things) poor employment or personal references, reports of substance abuse, a failed polygraph, or an undisclosed prior arrest revealed by fingerprint analysis.

Applicants who successfully complete the certification process are considered by the Commission for final scoring and inclusion on a list of certified candidates who may be appointed as a deputy sheriff. Certified applicants remain on the list for two years, and the sheriff fills open deputy positions by hiring from the list.

Darell Burton applied to become a deputy sheriff in Will County in 2010. His application moved along well at first, but it faltered during the formal background investigation. At that time the Commission's staff included Pam Taylor, who coordinated the certification process, and Kathy Rogina, who reported to Taylor and assisted her in the Commission's work. Richard Ackerson, a sergeant in the Sheriff's Office, was assigned to conduct Burton's background investigation.

When he applied for certification to become a Will County deputy sheriff, Burton was working for the Canadian National Railway as an assistant signalman. But railroad officials did not return the mailed reference form to the Merit Commission. So Ackerson contacted Mike Youngman, Burton's supervisor, to check his employment reference over the phone. Youngman gave Burton exceedingly negative marks, telling Ackerson that Burton was not a dependable employee. He also said that Burton's ability to work with others was poor and that the railroad would not rehire him or recommend him for a job in the Sheriff's Office. Finally,

Youngman explained that Burton was "currently off on a questionable work-related injury" that he had not timely reported. Ackerson recorded this information and included it in the summary template that he gave to Taylor for inclusion in Burton's file.

Taylor determined that Burton's unfavorable employment reference from the Canadian National Railway raised a red flag, so she presented it to the Merit Commission. The Commission reviewed the matter and removed Burton from the certification process based on the negative information from his employer.

Burton responded by suing the Merit Commission, the Sheriff's Office, and Will County claiming that he was removed from the certification process because of his race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2. The defendants moved for summary judgment, arguing first that the Merit Commission is not covered by Title VII because it has fewer than the statutory threshold of 15 employees, *see id.* § 2000e(b), and neither the Sheriff's Office nor Will County were involved in the certification process. Alternatively, they argued that Burton's claim lacked evidentiary support.

The district judge bypassed the issue of Title VII coverage and instead resolved the case on the merits. The judge agreed with the defendants that Burton had failed to produce evidence that his race was a motivating factor in the Commission's decision to remove him from the certification process. Nor was there anything in the record to suggest that the Commission's reason for doing so—the negative employment reference from the Canadian National Railway—was a pretextual cover for racial discrimination. Accordingly, the

judge granted the motion and entered judgment for the defendants. This appeal followed.

## II. Discussion

We review the judge's summary-judgment order de novo, construing the evidence in the light most favorable to Burton. *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015). As relevant here, Title VII of the Civil Rights Act prohibits employers from failing or refusing to hire a person because of his race. § 2000e-2(a)(1). The Act excludes employers with few employees: the statute defines the term "employer" to include only those with 15 or more employees. § 2000e(b).

The defendants argued below and reiterate here that Burton's claim falls outside Title VII's coverage because the Merit Commission—with only two full-time employees in addition to the five commissioners—is too small to qualify as an employer under the statute, and the Sheriff's Office and Will County had nothing to do with these events. Burton counters that the three governmental units should be deemed a single employer and their employees aggregated to satisfy the 15-employee threshold.

The district judge declined to address whether the employees of related government agencies and political subdivisions may be aggregated for purposes of Title VII's 15-employee baseline. We do the same. Because Burton's claim plainly lacks evidentiary support, we see no reason to decide this threshold issue. The statutory definition of "employer" is not a limit on the court's jurisdiction. *See Komorowski v. Townline Mini-Mart & Rest.*, 162 F.3d 962, 964 (7th Cir. 1998) (noting that the failure to meet the statutory definition

of employer does not deprive federal courts of subject-matter jurisdiction). We therefore move directly to the merits.

To proceed to trial on his Title VII claim, Burton had the burden to produce evidence that would permit a reasonable factfinder to conclude that his race caused the Merit Commission to remove him from the certification process. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Burton framed his case under the *McDonnell Douglas* burden-shifting formula. That familiar evidentiary framework requires the plaintiff to first show that he "applied for an available position" for which he was qualified "but was rejected under circumstances [that] give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (describing the plaintiff's prima facie case under *McDonnell Douglas*). If the plaintiff establishes this prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for rejecting the plaintiff's application. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer does so, then the burden shifts back to the plaintiff to show that the employer's explanation was pretextual—that is, "a lie" or "phony reason" designed to conceal unlawful discrimination. *Ferrill v. Oak Creek–Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017).

Importantly, however, the legal standard in a Title VII case is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. The *McDonnell Douglas* framework is "merely one way of culling the relevant evidence" to help answer this question. *Johnson*

*v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018).

The evidence here permits only one reasonable conclusion: the Merit Commission removed Burton from the certification process because of his negative employment reference from the Canadian National Railway. That is unquestionably a legitimate, nondiscriminatory reason for the Commission's decision. *See Lee v. Nat'l Can Corp.*, 699 F.2d 932, 937 (7th Cir. 1983) ("Title VII does not compel employers to hire unqualified applicants with questionable employment histories."). And no evidence casts doubt on it.

So Burton's case fails at two steps in the *McDonnell Douglas* framework: he has not established that he was qualified for the job (part of his prima facie case), and he has not established that the reason for the Commission's decision was a pretextual cover for unlawful discrimination. *See Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020) (explaining that the prima facie and pretext inquiries often overlap). Even when the record is reviewed more generally, unencumbered by the burden-shifting framework, there is nothing to support a reasonable inference that Burton's race caused the Merit Commission to remove him from the certification process.

Burton has several responses, but none is persuasive; one is also new on appeal and thus waived. Burton first notes that the Merit Commission did not disclose the negative employment reference until litigation began. He contends that the delay casts suspicion on the Commission's justification. This argument is a nonstarter. A local ordinance prohibits the Merit Commission from disclosing the reason for rejecting an

applicant. WILL COUNTY, ILL., CODE § 33.004(B). The Commission's compliance with local law raises no suspicion.

Burton also thinks it's suspicious that the phrase "out per board bad b/g" appears next to certain names in a chart of applicants—but not his. His theory is that if he were really removed from the certification process because of a bad background investigation, then this phrase would have been written next to his name too. The Merit Commission responds without contradiction that this notation on the chart refers to applicants who were removed based on a "red flag" that arose in their long-form application, *not* the formal background investigation that occurs later in the process after the candidate's file is assigned to an investigator. The chart itself supports this explanation. The phrase "out per board bad b/g" always appears in the column titled "Long Ap." But Burton advanced beyond the long-application step in the certification process, so it makes sense that this phrase does not appear in this column next to his name.

Next, Burton highlights a comment made by a member of the Merit Commission during his deposition. The commissioner in question referred to a former member of the Commission as "colored"—a reference that Burton argues is evidence of bias against black applicants. This argument was not raised in the district court and thus is waived. *Bradley v. Village of Univ. Park*, 59 F.4th 887, 897 (7th Cir. 2023). Waiver aside, this remark came nearly a decade after the Merit Commission made the certification decision in Burton's case and had no connection to him. "[S]tray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment." *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 813 (7th Cir. 2007).

Burton also argues that the red-flag process was conducted abnormally in his case. He claims that according to Taylor's deposition testimony, she does not normally consider a negative employment reference as a red flag. This argument misreads the record. One of the questions on the printed "mail out" reference form is: "Would you recommend this applicant for a position in Law Enforcement with the Will County Sheriff's Office?" The responding employer may check the "yes" or "no" box. Taylor testified that if an applicant's current or former employer "just checked no" and provided "nothing else," she would not necessarily consider the answer a red flag.

That's not what happened in Burton's case. The Canadian National Railway did not return the "mail out" reference form. Instead, Ackerson obtained information about Burton directly from Youngman, his supervisor, who said that the railroad would not recommend him. Youngman also provided additional unfavorable information: he said that Burton would not be rehired and was not dependable, did not work well with others, and was off on a questionable work-related injury that he had failed to report in a timely fashion. Taylor testified that "all of that together combined is a red flag." No evidence suggests that Taylor handled the red-flag process in Burton's case any differently than she normally does.

Burton also tries to bolster his case with statistical data. But statistical evidence can support a Title VII claim only if it is paired with "evidence of specific discrimination against the plaintiff" himself. *Matthews v. Waukesha County*, 759 F.3d 821,

829 (7th Cir. 2014). There is no evidence of specific discrimination against Burton.[1]

Finally, Burton focuses on Ackerson's role in the certification process—more particularly, his failure to follow up on the negative information he received from Youngman. This argument rests loosely on a "cat's paw" theory, which refers to a scenario in which a lower-level employee manipulates the ultimate decisionmaker into taking discriminatory action. *See Sinha v. Bradley Univ.*, 995 F.3d 568, 574 (7th Cir. 2021). To succeed on this theory, Burton must show that a "biased subordinate actually harbored discriminatory animus against him and that the subordinate's scheme proximately caused the adverse employment action." *Id.* (quotation omitted).

Burton claims without evidence that Ackerson harbored discriminatory animus and manipulated the Merit Commission. His only basis for this serious accusation is his own subjective view that Ackerson should not have taken the

---

[1] Moreover, as the district judge noted, Burton's numerical analysis lacks anything resembling statistical rigor. More than 280 applicants sought certification around the same time as Burton. His data set includes only 119 of these applicants. He then identifies 7 nonwhite applicants among the 119 and notes that only 2 of these 7 nonwhite applicants ultimately obtained certification, reflecting a lower certification rate for this group than the general applicant pool. There are several obvious shortcomings in this analysis. The original sample is incomplete, and Burton has not shown that his chosen group of 119 fairly represents the general applicant pool of more than 280. Nor has he attempted to control for other variables that may have affected the 7 nonwhite applicants in the certification process. And only 3 of the nonwhite applicants that Burton identifies (aside from himself) are black. One was struck after failing a polygraph test; the Merit Commission certified the other two.

information he obtained from Youngman at face value. That's not evidence of discriminatory intent.

In sum, a reasonable jury could not conclude that the Merit Commission removed Burton from the certification process because of his race. And there is no evidentiary basis for Burton's claim against the Sheriff's Office and Will County. The judge properly entered summary judgment for the defendants.

AFFIRMED